**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **CEDRIC DAVIS, #233423,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 2:07-CV-1061-WHA** |
| | ) | |
| **CARTER F. DAVENPORT, et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |

---

## SPECIAL REPORT AND ANSWER OF DEFENDANT JAMEKA CAFFIE

---

Comes now the Defendant identified in Plaintiff's Complaint as Ms. Caffie, by and through her undersigned counsel of record, and in compliance with this Honorable Court's Order of December 6, 2007, does hereby file this Special Report and Answer in opposition to the Plaintiff's Complaint:

## SPECIAL REPORT

I.     **NARRATIVE STATEMENT OF FACTS**

A.     **Summary of Complaint and Current Allegations**

On October 24, 2007, the Plaintiff filed a Complaint with this Court, alleging that the Defendants named in the above-styled action acted with negligence and violated certain constitutional rights. (See Complaint).

As directed, the Defendant has undertaken a review of Plaintiff's claims to

determine the facts and circumstances relevant thereto.[1] [2] Defendant Caffie, as a mental health professional, conducted a review of the Plaintiff's medical records and recalls the incidents described in Plaintiff's Complaint.

### 1.    Current Allegations

In his Complaint, the Plaintiff makes a general allegation that the Defendants negligently and wantonly allowed the Plaintiff to be placed in an unsafe environment so that he could be injured, i.e. obtaining a razor while on suicide watch.  Specifically, the Plaintiff alleges that the Defendants owed him a duty of care and that duty was breached. Plaintiff further alleges that the Defendants negligence was cruel and unusual and the Defendants acted maliciously, sadistically, wantonly and without care to cause harm to the Plaintiff.

### 2.    Allegations Applicable to Defendant Caffie

In Plaintiff's alleged supporting facts, Plaintiff's sole allegation directly made against Defendant Caffie is that she stood by laughing and making jokes while the Plaintiff attempted suicide.  The remaining allegations of the Complaint are general in nature and it is difficult to determine any other allegations against this Defendant.

### 3.    Allegations Inapplicable to Defendant Caffie

Though the Plaintiff groups all of the named defendants together throughout many

---

[1] The Defendant hereby submits her affidavit as Exhibit "A."

[2] The Defendant hereby submits the relevant portions of Mr. Davis's mental health records as Exhibit "B."

allegations of the Complaint, it should be noted, from the outset, that Defendant Caffie is

not responsible for actions taken by ADOC's officers and/or other personnel.

## II.    DISCUSSION

### A.    Heightened Pleading Requirement

In an effort to defeat baseless claims at the earliest possible opportunity, the

Eleventh Circuit requires that a Plaintiff in a civil action allege with necessary specificity

facts which demonstrate a claim.  *GJR Inv., Inc. v. County of Escambia, Fla.*, 132 F.3d

1359, 1367 (11th Cir. 1998). The purpose of this requirement is to allow a defendant to

file an appropriate responsive pleading.  *Anderson v. Dist. Bd. of Tr. of Cent. Fla. Cmty.*

*Coll.*, 777 F.3d 364, 366 (11th Cir. 1996).  In the instant action, the Plaintiff has failed to

satisfy this heightened pleading requirement with respect to Defendant Caffie.  His sole

allegation directly relating to this Defendant is that she laughed and made jokes while he

was attempting suicide.  While this allegation is highly disputed, it does not rise to the

heightened level required and therefore due to be dismissed.

### B.    Plaintiff Fails to Satisfy His Burden of Establishing the Eighth Amendment Standard that the Defendant Acted With "Deliberate Indifference."

It is unquestioned that "[c]onfinement in a prison...is a form of punishment subject

to scrutiny under the Eighth Amendment standards" *Rhodes v. Chapman*, 452 U.S. 337,

345 (1981) (quoting *Hutto v. Finney*, 437 U.S. 678, 685 (1978)); *see also Farmer v.*

*Brennan*, 511 U.S. 825, 832 (1994); *Whitley v. Albers*, 475 U.S. 312, 327 (1986), and a

violation of such standards may be actionable under 42 U.S.C. § 1983.

On numerous occasions, courts have attempted to clearly define the requirements for asserting and succeeding upon an Eighth Amendment violation claim under § 1983. In *Estelle v. Gamble*, the United States Supreme Court held that an Eighth Amendment claim exists only when a prison official engages in the "unnecessary and wanton infliction of pain." 429 U.S. 97, 105 (1976); *see also Wilson v. Seiter*, 501 U.S. 294 (1991). In the context of general prison conditions, this phrase has been interpreted to mean that prison officials must not act with "deliberate indifference." *See Farmer*, 511 U.S. at 387 (stating that deliberate indifference exists when "the official knows of and disregards an excessive risk to inmate health or safety...").

In order for a deliberate indifference claim to prevail, Plaintiff must prove both the "objective" and "subjective" components of the Eighth Amendment standard. Specifically, Plaintiff must allege and prove that he suffered from a serious medical need, that Defendant Caffie was deliberately indifferent to his needs, and that he suffered harm due to this deliberate indifference. *See Marsh v. Butler County*, 225 F.3d 1243, 1255 (11th Cir. 2000); *Palermo v. Corr. Med. Serv.*, 133 F. Supp. 2d 1348 (S.D. Fla. 2001). It is well-established in the Eleventh Circuit that a serious medical need is a "condition that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (citing *Hill v. DeKalb Reg'l Youth Det. Ctr.*,

40 F.3d 1176, 1187 (11th Cir. 1994)).  The burden falls upon Plaintiff to allege and prove

the existence of such a condition.   *See e.g. Hamm v. DeKalb County*, 774 F.2d 1567 (11th

Cir. 1985).

Plaintiff has the additional burden of proving deliberate indifference; that is, it is

required of Plaintiff to establish that Defendant Caffie acted with "conscious or callous

indifference." *See Daniels v. Williams*, 474 U.S. 327 (1986); *Brown v. Hughes*, 894 F.2d

1533, 1537-38 (11th Cir. 1990).  As such, Plaintiff's §1983 claim cannot survive summary

judgment unless he produces evidence "of [the Defendant's] subjective awareness" of the

alleged medical condition and an "intentional refusal to provide...care." *Campbell v.

Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999). Thus, Defendant Caffie may only be liable if

he had knowledge of Plaintiff's medical condition, acted intentionally or recklessly to

deny and/or delay access to his care, or to interfere with treatment once prescribed.  *See

Estelle,* 429 U.S. at 104-105; *Hill,* 40 F.3d at 1191.

Plaintiff has not, and cannot, meet this burden.  In the instant action, the records

and affidavit testimony clearly indicate that, during the time period referenced in the

Complaint, the Plaintiff's suicidal threats and attempts were addressed promptly,

professionally, and in accordance with the applicable standard of care.  The Plaintiff was

placed in the safe cell on October 2, 2007, and was monitored every 15 minutes while in

the cell.  This monitoring is confirmed by the log sheets contained in the Plaintiff's

records.  On October 3, 2007, the Plaintiff attempted suicide by using a thread torn from

his black mat. There is no evidence that this thread was sufficient for the Plaintiff to cause harm to himself. To the contrary, when the Plaintiff made the suicide attempt, the thread broke immediately.

Following this incident, the medical records clearly reflect that the Plaintiff received prompt and professional mental health care. The Plaintiff was continued on suicide watch after the attempt and only removed from his safe cell when he began destroying his shroud and mat. Though placed in a separation cell, the Plaintiff was still monitored by mental health personnel.

The Plaintiff also alleges that the Defendants negligence somehow permitted him to obtain a razor that he used to cut his wrist, however the Plaintiff does not state how or when he obtained this alleged razor. Without knowing and proving how this razor was obtained, it is impossible to find that any alleged negligence on the part of Defendant Caffie was the proximate cause of the Plaintiff obtaining that razor.

Finally, it is important to note that the Plaintiff alleges that he was not properly supervised while on suicide watch, however the fact that he is alive is a testament to the efforts of the suicide watch personnel. The Plaintiff did not have available any instrument by which he could cause harm to himself sufficient to result in death. Throughout all of the events alleged in the Complaint, the Plaintiff never even incurred a substantial injury. This in and of itself is evidence that Defendant Caffie, as well as the rest of the mental health personnel, were not negligent.

In conclusion, the evidence submitted with this Special Report clearly shows that Defendant Caffie never intentionally or recklessly acted to deny or delay medical care, or to interfere with any treatment which was prescribed or directed. To the contrary, the Plaintiff was protected from himself and provided professional treatment that did not fall below the standard of care. As such, the Defendant contends that Plaintiff's allegations are frivolous, malicious, and fail to state a claim upon which relief can be granted, thereby warranting dismissal.

### C.    Defendant Caffie is Entitled to Qualified Immunity From All Claims Asserted by the Plaintiff.

The Defendant is entitled to qualified immunity from all claims asserted by Plaintiff in this action. If Plaintiff was able to show, which he has not, that the Defendants were acting in their discretionary authority, the burden then shifts to Plaintiff to show that the Defendant violated clearly established law based on objective standards. *See Eubanks v. Gerwin*, 40 F.3d 1157, 1160 (11th Cir. 1994). Plaintiff must allege that the Defendant violated a right clearly established in a fact-specific, particularized sense. *Edwards v. Gilbert*, 867 F.2d 1271, 1273 (11th Cir. 1989), *aff'd in pertinent part, rev'd in part on other grounds, sub nom., Edwards v. Okaloosa County*, 5 F.3d 1431 (11th Cir. 1989).

The Eleventh Circuit further requires that the inquiry be fact specific, and that officials will be immune from suit if the law with respect to their actions was unclear at the time the cause of action arose, or if a reasonable person could have believed that their

actions were lawful in light of clearly established law and information possessed by the individual. *Vonstein v. Brescher*, 904 F.2d 572, 579 (11th Cir. 1990) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1989)). In *Lassiter v. Alabama A&M University*, the Eleventh Circuit held that in order for qualified immunity to be defeated, preexisting law must "dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates federal law in the circumstances." 28 F.3d 1146, 1151 (11th Cir. 1994).

The Defendant submits that there is no case law from the United States Supreme Court, the Eleventh Circuit Court of Appeals, or a District Court sitting within the Eleventh Circuit showing that, under the facts of this case, or lack thereof, it was clearly established that the alleged actions violated Plaintiff's constitutional rights. While there is jurisprudence involving successful suicide attempts by inmates, the cases in which immunity was denied are far different from the instant case. *See Hollingsworth v. Edgar*, Case No. 2:04-CV-935-WKW (M.D. Ala. 2006) (qualified immunity was denied for certain defendants who knew or should have reasonably known about plaintiff's suicidal nature and completely ignored and did nothing to protect the plaintiff from himself.). In the instant case, the Plaintiff's suicide threats were taken seriously and he was immediately placed into a safe cell. He was observed every 15 minutes, consulted daily by mental health professionals and provided appropriate mental health care.

Additionally, around the time the Plaintiff alleges to have attempted to cut his wrist with a razor, he had reported that he doing better and not having suicidal thoughts. Despite these positive reports, the Plaintiff remained on suicide watch and was monitored. As such, there is no grounds for denying the Defendant qualified immunity on all claims alleged by the Plaintiff.

**D.    Plaintiff's Claims Are Barred by the Prison Litigation Reform Act ("PLRA") Because He Failed To Show The Existence of a "Physical Injury."**

The PLRA states that "[n]o Federal civil action may be brought by a prisoner confined in jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e) (2005).  Plaintiff's Complaint states that he cut himself with a razor.  Therefore, the only physical injury in Plaintiff's Complaint is injury that he admittedly inflicted upon himself.  Clearly, this is insufficient to satisfy the Plaintiff's burden.  To permit such an injury to satisfy the "physical injury" requirement set forth in the PLRA would allow Plaintiffs to undermine the PLRA by simply inflicting harm upon themselves. Furthermore, in the instant action, this argument is strengthened by the fact that the cut on the Plaintiff's wrist is described as a scratch.  As such, Plaintiff's claims are due to be dismissed.

**E.    Plaintiff's Claims Are Barred by the PLRA Because the Plaintiff has Failed to Establish that He Exhausted His Administrative Remedies.**

The PLRA states that "[n]o action shall be brought with respect to prison

conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997(e)(a) (2005).

There are well-established grievance procedures for any inmate who wishes to voice a complaint regarding any medical treatment he has sought or received during his incarceration at the facilities. In his Complaint, Plaintiff never states that he filed formal grievances against this Defendant or any other of the named Defendants and has failed to produce any evidence that he attempted such procedures. As such, Plaintiff did not exhaust his administrative remedies as is required under the PLRA and his claims are therefore due to be dismissed.

## III.    CONCLUSION

The Plaintiff's Complaint is due to be dismissed on its face and is further disproved by the evidence now before the Court. Accordingly, the Defendant request that this Honorable Court either dismiss Plaintiff's Complaint, with or without prejudice, or, in the alternative, enter a judgment in their favor.

## ANSWER

COMES NOW, Defendant Jameka Caffie ("Defendant") and for her Answer to the Complaint filed by Plaintiff Cedric Davis, ("Plaintiff"), states as follows:

## FACTUAL ALLEGATIONS

1.    Defendant admits Plaintiff filed this lawsuit alleging that his rights under the 8th Amendment to the United States Constitution have been violated. Defendant denies that any such rights have

been violated and demands strict proof thereof.

2.      Defendant is without sufficient information to admit or deny that the Plaintiff has never filed a prior lawsuit relating to his imprisonment.  Therefore, said claim is denied and the Defendant demands strict proof thereof.

3.      Defendant admits that she was working at the Easterling Correctional Facility in Clio, Alabama, on October 3, 2007, and admits that on October 3, 2007, the Plaintiff attempted suicide with a string while in a suicide watch cell.  The Defendant denies the remaining allegations concerning this suicide attempt and demands strict proof thereof.

4.      Defendant denies the remaining allegations contained in page 1 and demands strict proof thereof.

5.      Defendant denies the remaining allegations contained in Pages 2 through 3 and demands strict proof thereof.

## PRAYER FOR RELIEF

6.      Defendant denies each and every prayer for relief set forth in Plaintiff's Complaint. Likewise, Defendant states that Plaintiff is not entitled to any of the requested relief.  To the extent the Complaint makes any allegations of material fact, Defendant denies such allegations and demands strict proof thereof.

## DEFENSES

### First Defense

Plaintiff's Complaint fails to state a claim upon which relief can be granted.

### Second Defense

Plaintiff's claims are barred by the statute of limitations.

### Third Defense

Plaintiff's claims are barred by the doctrine of contributory negligence and/or last clear chance.

### Fourth Defense

Plaintiff's claims are barred by the doctrine of assumption of risk.

### Fifth Defense

Plaintiff's actions are barred by the doctrine of waiver.

### Sixth Defense

Plaintiff's claims are barred by the doctrine of laches.

### Seventh Defense

Defendant avers that the wrongs and damages alleged by Plaintiff were caused solely by the acts and/or omissions of persons and/or entities for whom Defendant is not responsible.

### Eighth Defense

Plaintiff's claims are barred by the doctrine of qualified immunity.

### Ninth Defense

Plaintiff's claims are barred by the doctrine of sovereign immunity.

### Tenth Defense

Plaintiff's claims are barred by the doctrine of unclean hands.

### Eleventh Defense

This Court lacks subject matter jurisdiction over this dispute.

### Twelfth Defense

This Court is the improper venue in which to assert this action.

### Thirteenth Defense

Plaintiff lacks standing to bring this action.

**Fourteenth Defense**

Plaintiff's claims are barred by the doctrine of estoppel.

**Fifteenth Defense**

Plaintiff's claims are barred by the doctrine of *res judicata* and/or collateral estoppel.

**Sixteenth Defense**

Plaintiff's claims are barred, in whole or in part, because of his failure to mitigate damages.

**Seventeenth Defense**

Plaintiff's claims are barred because of the lack of damages suffered due to any of the alleged

wrongs asserted against Defendant.

**Eighteenth Defense**

Plaintiff's claims are barred because Defendant did not breach any duty Defendant allegedly

owed to Plaintiff.

**Nineteenth Defense**

Plaintiff's claims are barred because there is no causal relationship, legal or proximate, between

Defendant's actions and/or inactions and Plaintiff's alleged injuries and damages.

**Twentieth Defense**

Plaintiff's claims are barred because of the existence of superceding, intervening causes.

**Twenty-First Defense**

Plaintiff has failed to exhaust administrative remedies. 42 U.S.C. § 1997e(a) (2005).

**Twenty-Second Defense**

Plaintiff's claims are barred because the action asserted is "frivolous, malicious, and fails to state

a claim upon which relief can be granted." 42 U.S.C. § 1997e(c)(1) (2005).

### Twenty-Third Defense

Plaintiff's claims are barred because no personal, physical injury has been alleged and/or suffered

by Plaintiff. 42 U.S.C. § 1997e(e) (2005).

### Twenty-Fourth Defense

Plaintiff's claims are barred because the injunctive relief sought is not sufficiently narrowly

drawn. 18 U.S.C. § 3626(a)(1)(A) (2005).

### Twenty-Fifth Defense

Plaintiff's claims are barred because Defendant did not act with deliberate indifference.

*See Estelle v. Gamble*, 429 U.S. 97 (1976).

### Twenty-Sixth Defense

Plaintiff's claims are barred because he has failed to comply with the heightened specificity

requirements of Rule 8 in § 1983 cases against persons sued in their individual capacities. *See*

*Oladeinde v. City of Birmingham*, 963 F.2d 1481, 1485 (11th Cir. 1992); *Arnold v. Bd. of Educ. of*

*Escambia County*, 880 F.2d 305, 309 (11th Cir. 1989).

### Twenty-Seventh Defense

Plaintiff's claims are barred because he is seeking to question a medical judgment

via injunctive relief.

### Twenty-Eighth Defense

To the extent Plaintiff seeks to recover attorney's fees, Defendant objects to any and all such

requests for fees that are not asserted in the Complaint or otherwise approved by court order.

### Twenty-Ninth Defense

Plaintiff's claims for punitive damages violate Defendant's United States and Alabama constitutional protections from, including without limitation, excessive fines, cruel and unusual punishment, denial of due process and denial of equal protection of the law.

### Thirtieth Defense

Defendant reserves the right to assert other defenses as discovery proceeds.

Respectfully submitted on this the 15th day of January, 2008.

*s/Nicholas P. Hebert*
Nicholas P. Hebert - ASB-2631-038H
Attorney for Defendant Jameka Caffie
SCOTT, SULLIVAN, STREETMAN & FOX, P.C.
2450 Valleydale Road
Birmingham, AL 35244
Telephone: (205) 967-9675
Facsimile: (205) 967-7563
E-mail: hebert@sssandf.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **CEDRIC DAVIS, #233423,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 2:07-CV-1061-WHA** |
| | ) | |
| **CARTER F. DAVENPORT, et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |

---

**CERTIFICATE OF SERVICE**

---

This is to certify that on <u>January 15, 2008</u>, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to counsel who are CM/ECF participants, and I hereby certify that I have mailed by United States Postal Service the document to non-CM/ECF participants.

Respectfully submitted,

*<u>s</u>/Nicholas P. Hebert*

_____
Nicholas P. Hebert - ASB-2631-038H
Attorneys for Defendant Jameka Caffie
SCOTT, SULLIVAN, STREETMAN & FOX, P.C.
2450 Valleydale Road
Birmingham, AL 35244
Telephone: (205) 967-9675
Facsimile: (205) 967-7563
E-mail: hebert@sssandf.com

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

CEDRIC DAVIS, #233423,       )
                             )
        Plaintiff,           )
                             )
v.                           )
                             )     Case No.: 2:07-CV-1061-WHA
                             )
CARTER F. DAVENPORT, et al.  )
                             )
        Defendants.          )
                             )

## AFFIDAVIT OF JAMEKA CAFFIE

COMES NOW, the Defendant Jameka Caffie and pursuant to this Court's Order requiring the Defendant to provide an affidavit in support of her Special Report and Answer, submits the following affidavit:

1.      I am Jameka Caffie and I am over the age of nineteen years and have personal knowledge of the facts contained in this affidavit.

2.      I am presently employed as a Mental Health Professional, ~~Interim Site Supervisor~~ at Easterling Correctional Facility in Clio, Alabama. I have reviewed Inmate Davis's medical file and recall the treatment described in his Complaint.

3.      On October 2, 2007, Inmate Cedric Davis voiced suicidal ideations after receiving a disciplinary for indecent behavior directed toward me. Based upon those ideations, Inmate Davis was placed in a safe cell in accordance with the psychiatrist's orders. As per the orders, Inmate Davis was placed in the safe cell with a suicide shroud and black mat. Part of being on suicide watch was that Inmate Davis was to be observed every 15

minutes. During the time period addressed in the Complaint, this policy was adhered to and documented.

4.    At 8:07am on October 3, 2007, Mental Health Services conducted an evaluation of Inmate Davis in his safe cell. At that time, Inmate Davis stated that he was okay, but still felt suicidal. At that time, he had clear speech and was coherent.

5.    At 2:00pm on October 3, 2007, Dr. Ferrell had a consultation with Inmate Davis and ordered that he be continued on suicide watch. In accordance with those orders, Inmate Davis remained in his safe cell on suicide watch.

6.    At approximately 4:00pm, Officer Foster summoned me and I witnessed Inmate Davis in the safe cell standing on his toilet with a thin string he had torn from his black mat placed around his neck. Inmate Davis jumped off and the string broke.

7.    Inmate Davis was removed from the safe cell and taken to the Mental Health Nurse to be further evaluated. Part of this evaluation included a complete body chart for Inmate Davis to determine if he was physically injured by the attempt. I was present during the body chart and attempted to ask Inmate Davis the reason for his actions. Inmate Davis did not speak to me. Inmate Davis was seen by Dr. Ferrell at that time and ordered to be returned to the safe cell and suicide watch. Per these orders, Inmate Davis was returned to his safe cell and placed on suicide watch.

8.    Upon his return to the safe cell, Inmate Davis was angry, upset, and tore his safe smock into two pieces. Because of his destruction in the safe cell, Inmate Davis was placed on suicide watch in a stripped cell.

9.    On October 4, 2007, Inmate Davis was evaluated by Mental Health personnel and at that time stated that he was no longer suicidal. Inmate Davis was continued on suicide watch. On October 5, 2007, Mental Health personnel followed-up with Inmate Davis and he reported that he was doing good and was no longer suicidal.

10.    On October 8, 2007, Inmate Davis was again evaluated by Mental Health personnel in his safe cell. It was observed that he had superficial lacerations to his left wrist.

11.    At no time during Inmate Davis' treatment with the Mental Health staff did any mental health professional taunt at, laugh at, or belittle him in any manner. The mental health professionals were present in an effort to observe, treat and console Inmate Davis during this time. The entire mental health staff acted in a professional manner and did not breach any standard of care in their treatment of Inmate Davis.

Further Affiant saith not.

Jameka Caffie    MS, MHP

STATE OF ALABAMA        )
Barbour COUNTY          )

Sworn to and subscribed before me this the 15th day of January, 2008.

NOTARY PUBLIC
My Commission Expires: My Commission Expires Jan. 24, 2009

**ALABAMA DEPARTMENT OF CORRECTIONS MENTAL HEALTH SERVICES**
**TREATMENT PLAN: CRISIS INTERVENTION**

**Treatment Plan Reviewed On:** 10/2/07          **Treatment Coordinator:** S. Foster
**Inmate's Housing Location:** Crisis cell        **Institution:** Easterling Correctional Facility
**Presenting Crisis:** Suicidal Ideations

**DSM IV Diagnosis:** N/A (Not on Mental Health caseload but has mental illness history)
**Axis I:** N/A
**Axis II:** Deferred
**Axis III:** Deferred to medical
**Axis IV:** Incarceration/Disciplinary
**Axis V:** GAF 65 (current)

---

**Problem #1:** On 10/2/07 I/M Davis, Cedric voiced suicidal ideations after receiving a disciplinary for indecent behavior (sexual in orientation) directed towards MHP, Mrs. Caffie. I/M states, "I feel like hurting myself or someone else, it don't matter." "I have eight life sentences and 95 years."

**Goal:** Eliminate suicidal ideations
**Target Date for Resolution:** 72 hours

**Intervention:** Inmate is currently placed in a safe cell per Psychiatrist order. He was placed in a safe cell with suicide shroud, black mat and sack meals. Inmate will receive daily individual contacts to assess his mental status.

**Staff Member Responsible:** Psychiatrist, MHP, MHN          **Frequency:** Daily

---

**Problem #2:**

**Goal:**
**Target Date for Resolution:**

**Intervention:**

**Staff Member Responsible:**          **Frequency:**

---

**Treatment Team Members:**

Psychiatrist:                                          Date:
Mental Health Nurse: *M. Caffie*                      Date: 10/2/07
Treatment Coordinator: *No. Foster, MHP*              Date: 10/2/07
Inmate Agreement:                                     Date:

Treatment Plan Review by:          (within six months)

| Inmate Name: **Davis, Cedric** | AIS# **181653** |

**ALABAMA DEPARTMENT OF CORRECTIONS MENTAL HEALTH SERVICES**
**TREATMENT PLAN: CRISIS INTERVENTION**

**Treatment Plan Reviewed On**: 10/3/07          **Treatment Coordinator**: S. Foster
**Inmate's Housing Location**: Crisis cell          **Institution**: Easterling Correctional Facility
**Presenting Crisis**: Suicidal Ideations

**DSM IV Diagnosis**: Adjustment Disorder with depressed mood
**Axis I**: Adjustment Disorder with depressed mood
**Axis II**: Deferred
**Axis III**: Deferred to medical
**Axis IV**: Incarceration/Disciplinary
**Axis V**: GAF 65 (current)

---

**Problem #1**: I/M Davis, Cedric voiced suicidal ideations after receiving a disciplinary for indecent behavior (sexual in orientation) directed towards MHP, Mrs. Caffie.  At 8:07a.m. I/M states at "I'm O.K., still feeling suicidal."  No other verbal response given.  At 3:56 p.m. Officer witnessed I/M standing on toilet with a thin string tied around his neck gesturing (gamey) to hang himself.  Davis used the thread from his suicide mat to make this threat.  After body chart was completed he was placed back in his safe cell.  At that time, he tore his suicide smock apart.

**Goal**: Eliminate suicidal ideations
**Target Date for Resolution**: 72 hours

**Intervention**: Psychiatrist coded Davis MH-1 today.  I/M is currently placed in a stripped cell per Psychiatrist order.  He will be given sack meals.

**Staff Member Responsible**: Psychiatrist, MHP, MHN          **Frequency**:  Daily

---

**Problem #2**:

**Goal**:
**Target Date for Resolution**:

**Intervention**:

**Staff Member Responsible**:          **Frequency**:

---

**Treatment Team Members**:

Psychiatrist:          _McClanen_          Date:
Mental Health Nurse:          Date: 10/3/07
Treatment Coordinator: _MD. Foster, MHP_          Date: 10/3/07
Inmate Agreement:          Date:

Treatment Plan Review by:          (within six months)

| Inmate Name: **Davis, Cedric** | AIS# **233423** |

**ALABAMA DEPARTMENT OF CORRECTIONS MENTAL HEALTH SERVICES**
**TREATMENT PLAN: CRISIS INTERVENTION (REVIEW)**

Treatment Plan Reviewed On: 10/4/07
Inmate's Housing Location: Crisis Cell
Presenting Crisis: Verbalizing suicidal ideations

Treatment Coordinator: J. Caffie
Institution: Easterling Correctional Facility

---

**Problem #1:** Harris reported "I'm alright; I'm not suicidal anymore because I was not successful". Inmate made the comment that if he wanted to kill himself on last night he could have.

**Goal:** Eliminate suicidal ideations and distorted thinking.
**Target Date for Resolution:** 72 hours

**Intervention:** Psychiatrist continued suicide watch. Inmate will remain on suicide watch until psychiatrist discharges inmate from cell. Inmate's comments and previous actions make his intentions questionable.

**Staff Member Responsible:** Psychiatrist, MHP, MHN                    **Frequency:** Daily, weekly

---

**Problem #2:**

**Goal:**

**Target Date for Resolution:**
**Intervention:**

**Staff Member Responsible:**                    **Frequency:**

---

**Problem #3:**

**Goal:**

**Target Date for Resolution:**

**Intervention:**

**Staff Member Responsible:**                    **Frequency:**

---

**Treatment Team Members**

Psychiatrist:                                              Date:
Mental Health Nurse: _SMClannon_          Date: 10/4/07
Treatment Coordinator: _Coffin, MS, MHP_  Date: 10/4/07
Inmate Agreement:                                      Date:
Treatment Plan Review by:          (within six months)

---

| Inmate Name: Davis, Cedric | AIS# 233423 |
|---|---|

**ALABAMA DEPARTMENT OF CORRECTIONS MENTAL HEALTH SERVICES**
**TREATMENT PLAN: CRISIS INTERVENTION (REVIEW)**

Treatment Plan Reviewed On: 10/5/07
Inmate's Housing Location: Crisis Cell
Presenting Crisis: Verbalizing suicidal ideations

Treatment Coordinator: J. Caffie
Institution: Easterling Correctional Facility

---

**Problem #1:** Harris reported "I'm doing good" and "I been thinking about life". "At that point, I thought that I wanted to die". J/M appeared to be sarcastic when making comments.

**Goal:** Eliminate suicidal ideations and distorted thinking.
**Target Date for Resolution:** 72 hours

**Intervention:** Psychiatrist continued suicide watch. Inmate will remain on suicide watch until psychiatrist discharges inmate from cell. Inmate's comments and previous actions make his intentions questionable.

**Staff Member Responsible:** Psychiatrist, MHP, MHN                     **Frequency:** Daily, weekly

---

**Problem #2:**

**Goal:**

**Target Date for Resolution:**
**Intervention:**

**Staff Member Responsible:**                     **Frequency:**

---

**Problem #3:**

**Goal:**

**Target Date for Resolution:**

**Intervention:**

**Staff Member Responsible:**                     **Frequency:**

---

**Treatment Team Members**

Psychiatrist:                                          Date:
Mental Health Nurse: _mcclenna_                        Date: 10/5/07
Treatment Coordinator: _Caffie MHP_                    Date: 10/5/07
Inmate Agreement:                                      Date:
Treatment Plan Review by:        (within six months)

---

| Inmate Name: Davis, Cedric | AIS# 233423 |
|---|---|

**ALABAMA DEPARTMENT OF CORRECTIONS MENTAL HEALTH SERVICES**
**TREATMENT PLAN: CRISIS INTERVENTION (REVIEW)**

**Treatment Plan Reviewed On:** 10/8/07
**Inmate's Housing Location:** Crisis Cell
**Presenting Crisis:** Verbalizing suicidal ideations and making suicidal gestures

**Treatment Coordinator:** J. Caffie
**Institution:** Easterling Correctional Facility

---

**Problem #1:** Over the weekend, Davis made superficial lacerations to his left wrist. Inmate was removed from crisis cell in segregation and taken to crisis cell in HCU for closer monitoring. Inmate stated "I am just going in a downward spiral". "I was thinking more about the negative than the positives".

**Goal:** Eliminate suicidal ideations and distorted thinking.
**Target Date for Resolution:** 72 hours

**Intervention:** Psychiatrist continued suicide watch. Inmate will remain on suicide watch until psychiatrist discharges inmate from cell. Inmate will be allowed safe smock, safe mat, and sack meals.

**Staff Member Responsible:** Psychiatrist, MHP, MHN

**Frequency:** Daily, weekly

---

**Problem #2:**

**Goal:**

**Target Date for Resolution:**
**Intervention:**

**Staff Member Responsible:**

**Frequency:**

---

**Problem #3:**

**Goal:**

**Target Date for Resolution:**

**Intervention:**

**Staff Member Responsible:**

**Frequency:**

---

**Treatment Team Members**

| | | |
|---|---|---|
| Psychiatrist: | | Date: |
| Mental Health Nurse: | McKinzie | Date: 10/8/07 |
| Treatment Coordinator: | _, MS, MHP_ | Date: 10/8/07 |
| Inmate Agreement: | | Date: |
| Treatment Plan Review by: | (within six months) | |

---

| Inmate Name: Davis, Cedric | AIS# 233423 |
|---|---|

**ALABAMA DEPARTMENT OF CORRECTIONS MENTAL HEALTH SERVICES**
**TREATMENT PLAN: CRISIS INTERVENTION (REVIEW)**

**Treatment Plan Reviewed On:** 10/9/07
**Inmate's Housing Location:** Crisis Cell
**Presenting Crisis:** Verbalizing suicidal ideations

**Treatment Coordinator:** J. Caffie
**Institution:** Easterling Correctional Facility

**Problem #1:** Davis on suicide watch because of suicidal ideations and gestures. "I am surviving". Inmate stated that he did not know if he was stable or not.

**Goal:** Eliminate suicidal ideations and distorted thinking.
**Target Date for Resolution:** 72 hours

**Intervention:** Psychiatrist continued suicide watch. Inmate will remain on suicide watch until psychiatrist discharges inmate from cell. Inmate will be allowed safe smock, safe mat, and sack meals.

**Staff Member Responsible:** Psychiatrist, MHP, MHN

**Frequency:** Daily, weekly

**Problem #2:**

**Goal:**

**Target Date for Resolution:**
**Intervention:**

**Staff Member Responsible:**

**Frequency:**

**Problem #3:**

**Goal:**

**Target Date for Resolution:**

**Intervention:**

**Staff Member Responsible:**

**Frequency:**

**Treatment Team Members**

Psychiatrist:
Mental Health Nurse: _McKinnon_        Date: 10/9/07
Treatment Coordinator: _MS, MHP_        Date: 10/9/07
Inmate Agreement:                        Date:
Treatment Plan Review by:        (within six months)

| Inmate Name: Davis, Cedric | AIS# 233423 |
|---|---|

# Alabama Department of Corrections Mental Health Services
## Treatment Plan: Outpatient Care

**Treatment Plan Initiated on:** 10/10/07
**Institution:** Easterling Correctional Facility

**Treatment Coordinator:** S. Foster
**Inmate's Location:** Segregation

**DSM IV Diagnosis:** Adjustment D/O with Depressed mood and Behavior disturbance
Axis I:  Adjustment D/O with Depressed mood and Behavior disturbance
Axis II: Deferred
Axis III: Deferred
Axis IV: Incarceration
Axis V: GAF=75 (current)

---

**Problem # 1:** I/M Davis exhibits signs/symptoms of Adjustment D/O with depressed mood and behavior disturbance as evidenced by—depressed moods, suicidal ideations, anxiety, tearfulness, and feelings of hopelessness.  He correlates his distress to situational/institutional stressors (i.e. serving 8 life sentences, missing his 5 children, dealing with homosexual activity, and prison fights).

---

Goal: Alleviate emotional, psychological, and behavioral distress

Target Date for Resolution: 6 months

---

Intervention(s):  Davis will receive monthly individual counseling and 90 days psychiatric care.  The entire treatment team will monitor his mental stability/medication compliance.  MHP will focus on Davis's strengths in an effort to help him adapt and cope effectively with stressors.  He will be educated regarding relationship between mood and adjusting.  He will be encouraged to vent thoughts and feelings.  He will be referred and encouraged to enroll in the next Depression group offered.

Staff Member(s) Responsible: Psychiatrist, MHP, MHN          Frequency: weekly, monthly, 90 days

---

**Problem # 2:** I/M Davis was coded MH –1 when he voiced experiencing suicidal ideations, after receiving a disciplinary. He remained in crisis cell for 8 days preceding this incident.  **(10/2/07)** Davis verbalized, "I feel like hurting myself or someone else it don't matter." **(10/3/07)** He tore thread from his mat and tied it around his neck, gesturing suicide.  **(10/4/07)** he stated, "I'm not suicidal anymore because I wasn't successful." **(10/5/07)** "I'm not suicidal anymore, at that moment, I thought I was ready to die." While in safe cell Davis behaved aggressively destroying his smock and crisis mat by ripping them apart.

---

Goal: Eliminate suicidal ideations, plans, or gestures

Target Date for Resolution: 6 months

Intervention(s): Davis will receive monthly individual counseling and 90 days psychiatric care.  The entire treatment team will monitor his mental stability/medication compliance. He will be encouraged to enroll and participate in the Depression group when offered.  MHP will assist Davis in developing coping strategies (e.g. more physical exercise, increased effective social involvement, breathing techniques, and seek family support).

Staff Member(s) Responsible: Psychiatrist, MHP, MHN          Frequency: Weekly, Monthly, 90 days

---

Psychiatrist: _____  Date: _10/6/07_
Treatment Coordinator: _____  Date: _10/9/07_
Mental Health Nurse: _____  Date: _10/17/__
Inmate Agreement: _____  Date: _10/17/__

---

Treatment Plan Review to be Conducted by:          (within six months)

---

| Inmate Name: **Davis, Cedric** | AIS # **233423** |

# MENTAL HEALTH UNIT
# PATIENT INFORMATION SLIP

_Easterling_
INSTITUTION

_Davis, Cedric_          _233423_  _B/m_
NAME                      NUMBER     R/S

Lay-in for _____ days from _____ to
(date)

_____ due to _____
(date)

— Suicide) watch) - seg.
unit
— Strip) cell)
— Sack) meals) only

Instructions: _____

_____

_____

_____

_____

*Failure to follow the directions above may result in a disciplinary.*

_10/3/07_
Date Issued

Signature

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS
MENTAL HEALTH SERVICES

## PSYCHIATRIC PROGRESS NOTES

DATE: 10/3/07     TIME:

| Target Symptoms | Behavioral Rating Scale  0=No problem  5= worst | Today versus Before |
|---|---|---|
| Pt c̄ suicide ideation — in safe cell on suicide watch — written up for inappropriate behavior w/ nursing female staff. | | |

Medications: On no psych meds

Informed Consent

Compliance: Inmate report _____ % versus MAR _____ %

In addition to the information in the tables above and below, then inmate-patient:

**SUBJECTIVE:** Inmate denies acting out, tore mattress up, tied sheets, then asked neck, end if to

Side effects: hung self, attempted to tear safe smock up.

**OBJECTIVE:** Pt acting out 2° legal, inducement, got disciplinary —

| Selected Issues | NO | YES | If yes, comment on pertinent positive findings |
|---|---|---|---|
| Psychosis | ✓ | | none reported |
| Serious Depression | ✓ | | no history of such |
| Self-Injurious Thoughts | ✓ | | Not believed suicidal — Malingering |
| Suicidal Intent | ✓ | | Suicidal gesture |
| Aggressive | ✓ | | |
| Seriously Impulsive | | ✓ | immature / + limited coping skills |
| Situational Upset | | ✓ | S/P disciplinary action |

Lab info:     Labs Ordered:     Labs Reviewed:     AIMS:

**ASSESSMENT**/Diagnosis (DSM-IV)
Adjustment D/O c̄ depressed mood + behav. disturbance
R/O polysubstance abuse
Impulse Control Issue

**PLAN:** Rudimentary coping skills
Must continue suicide watch — By so in safe seg cell — Strip cell 2° inmate tearing up mattress + smocks.
Return to clinic: 7 days   Print Last Name: Perral   Sign: [signature]

| Patient's Name: (Last, First, Middle) | AIS # | Age | R/S | Code | Institution |
|---|---|---|---|---|---|
| Davis Cedric | 233423 | 31 | B/M | MH-1 | Easterly |

Disposition: Inmate Medical Record

ADOC AR: 615, 632, 633
ADOC Form MH-025 – November 14, 2005

# MENTAL HEALTH UNIT
## PATIENT INFORMATION SLIP

Easterling
**INSTITUTION**

Davis Cedric                    233423      B/M
**NAME**                        **NUMBER**   **R/S**

Lay-in for _____ days from _____ to
                                        **(date)**

_____ due to _____
        **(date)**

Place on suicide Watch In safe cell

May have suicide gown, blanket + Mattress

No Personal belongings irSharp objects

**Instructions:** Sack meals only

_____

_____

_____

*Failure to follow the directions above may result in a disciplinary.*

10/2/07                          Dr. Hunter ∫mckinron W
**Date Issued**                  **Signature**

Lt Nettel Lamm                   12:14 p.m

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS
MENTAL HEALTH SERVICES

## PROGRESS NOTES

| DATE | Crisis Intervention Note | SIGNATURE |
|---|---|---|
| 10/2/07 2:01p.m | S- I/M Davis, Cedric, states, "I feel like hurting myself or someone else, it don't matter." "I have 8 life sentences & 95 yrs." O- b/m, standing in infirmary, good eye contact, coherent, clear speech, sarcastic, voicing suicidal ideations. A- Unstable. Prior MH History P- Contact on-call psychiatrist | — Vet, no MHP |
| 10/2/07 2:15p | P/E Dr. Hunter Contacted + New orders received Lt Lewson notified. Patient escorted to Safe cell on suicide Precaution — | SMcKinnon L |
| 10/3/07 7:07a.m. | Crisis Intervention Note S- "I'm O.K." "Still feeling suicidal." O- b/m, sitting on mat, lower body covered, good eye contact, coherent, affect: flat, clear speech, little selk. A- Cont. to voice suicidal ideations (Unstable) P- Cont. watch. | |
| 10/3/07 2PM | S- Inmate Seen P Dr. Ferrell. New orders Received Continue suicide watch — | SMcKinnon |
| 10/3/07 5P | S- Inmate seen for bodychart for tieing string around neck. Inmate later began to tear suicide smock while in safe cell (Central Control) New orders received to strip cell and place Inmate onsuicide watch in SC — | SMcKinnon |
| **INMATE NAME** | **AIS #** | **INSTITUTION** |
| Davis, Cedric | 23 34 23 | Easterling |

Disposition: Inmate Medical Record
Printed Front and Back on Blue Paper

Reference: ADOC AR: 604, 613, 614, 616, 622, 623, 627, 635, 628, 632, 633, 635, 638
ADOC Form MH-040 – November 14, 2005

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS
MENTAL HEALTH SERVICES

## PROGRESS NOTES

| DATE | | SIGNATURE |
|------|--|-----------|
| C: crisis intervention | | |
| 9/0/05 S- Officer Footer notified MHP+MHN that inmate was in safe cell w/ a thing tied around his neck. | | |
| O- I/M standing on toilet in safe cell with thin thing tied around his neck, tieing the other end to something in the ceiling. I/M jumped and thing broke. I/M was then removed from cell for body audit. MHN completed body audit. I/M would not respond to any of the MHP's questions. After being placed back in safe cell, I/M proceded to tear safe smock into two. Inmate was then removed from safe cell in Admin and taken to safe cell in segregation. | | |
| A- Inmate was angry and upset; suspected malingering. | | |
| P- Continue suicide watch as ordered by Dr. Ferrell. | | ___ J. Cliff, MHP |

| INMATE NAME | AIS # | INSTITUTION |
|-------------|-------|-------------|
| Lewis Cedric | 033423 | Easterling |

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS
MENTAL HEALTH SERVICES

## PROGRESS NOTES

| DATE | Crisis Intervention | SIGNATURE |
|------|---------------------|-----------|
| 10/04/07 1:00pm | S- "I'm alright." "No, I'm not suicidal." Inmate reported "I'm not suicidal anymore, because I wasn't successful." "If I wanted to kill myself last night I could have because there are razors around." Inmate began to open up with issues. Inmate discussed his (5) five children, and life sentences. Inmate stated that he felt that he would be worth more to his children dead than alive at the times of the suicidal gestures. Inmate also voiced being stressed out having to deal with the institutional stressors (homosexual activity, fights, etc.) Inmate also apologized to MHP Cassie for his inappropriate behavior on 10/2/07. O-B/al, alert, oriented, calm, affect was appropriate. Denies having suicidal ideations or intentions. Nurse obtained vitals - BP 130/90, P-80, R-16, T-97.8. ————— S. McCannon LPN A- Suicide watch as means of coping. | |

| INMATE NAME | AIS # | INSTITUTION |
|-------------|-------|-------------|
| Davis, Cedrick | 233423 | Easterling |

Disposition: Inmate Medical Record
Printed Front and Back on Blue Paper

Reference: ADOC AR: 604, 613, 614, 616, 622, 623, 627, 634, 628, 632, 633, 635, 638
ADOC Form MH-040 – November 14, 2005

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS
MENTAL HEALTH SERVICES

## PROGRESS NOTES



| DATE | | SIGNATURE |
|---|---|---|
| 4/0? | Crisis intervention - Continue suicide watch until discharged by psychiatrist. | L Gaffie, MHP |

| INMATE NAME | AIS # | INSTITUTION |
|---|---|---|
| Davio, Cedrick | 233623 | Easterling |

Disposition: Inmate Medical Record
Printed Front and Back on Blue Paper

Reference: ADOC AR: 604, 613, 614, 616, 622, 623, 627, 634, 628, 632, 633, 635, 638
ADOC Form MH-040 – November 14, 2005

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS
MENTAL HEALTH SERVICES

**PROGRESS NOTES**

| DATE | | SIGNATURE |
|------|--|-----------|
| 10/5/07 11:00am | Monthly individual - Crisis Intervention S- "I'm doing good". "I been thinking about my life". Assured MHP + MHN that he would not do anything to hurt himself. "I have to look at everything as a whole rather than through tunnel vision. "I'm not suicidal anymore". "At that moment, I thought I was ready to die". O-BM, hand cuffed, alert, oriented, euthymic mood, appropriate affect. MHN McKinnon obtained vitals: T-98.8 BP-120/80, P-80, R-18 A- Suicide watch. O- Continue watch until discharged by psychiatrist. | Jmckinnon LPN  J Capell MHP |
| 10/8/07 8:00am | Crisis Intervention S- "I guess I'm just in a downward spiral". "I was thinking about my life in general." "I was thinking more about the negatives than the positives." Voiced not having suicidal thoughts at this point, then stated "I don't know what's going to happen at 2:00 pm." O- BM in safe cell, alert, oriented w/ superficial lacerations to left wrist. | |

| INMATE NAME | AIS # | INSTITUTION |
|-------------|-------|-------------|
| Davis, Cedrick | 233423 | Easterling |

Reference: ADOC AR: 604, 613, 614, 616, 622, 623, 627, 634, 628, 632, 633, 635, 638
ADOC Form MH-040 – November 14, 2005

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS
MENTAL HEALTH SERVICES

**PROGRESS NOTES**

| DATE | Crisis intervention (con't) | SIGNATURE |
|------|------|------|
| 10/8/07 9:00AM | MHN obtained vitals - T-96⁸, BP 130/80, R-18, P 66 | SMcKinnon LPN |
| | A- Suicide watch | |
| | P- Continue suicide watch. | JE Coffin NP |
| | Crisis intervention, (con't) | |
| 10/9/07 9:00AM | S- "I am surviving", "I'm not suicidal" I/M states that he is ready to come off watch. However, inmate stated that he did not know whether he was stable or not. Reports eating 3 meals a day and sleeping 6-7 hours a night. | |
| | O- I/M in safe smock, on safe mat. Alert, oriented, euthymic mood. MHN got obtained vitals - T-97⁸, BP 130/78, P-80, R-18. | SMcKinnon LPN |
| | A- Suicide watch. | |
| | P- Continue suicide watch until released by psychiatrist. | JE Coffin NP |

| INMATE NAME | AIS # | INSTITUTION |
|------|------|------|
| Davis, Cedric | 233423 | Easterling |

Disposition: Inmate Medical Record
Printed Front and Back on Blue Paper

Reference: ADOC AR: 604, 613, 614, 616, 622, 623, 627, 634, 628, 632, 633, 635, 638
ADOC Form MH-040 – November 14, 2005

**PHS**
PRISON
HEALTH
SERVICES
INCORPORATED

# EMERGENCY

| ADMISSION DATE 10 / 2 / 07 | TIME 1155 ☑AM ☐PM | ORIGINATING FACILITY ✓ PHS ☐ SIR ☐ PDL ☐ ESCAPEE ☐ _____ | ☐ SICK CALL ☐ EMERGENCY ☐ OUTPATIENT |

| ALLERGIES NKA | WT. 219 | CONDITION ON ADMISSION ☑GOOD ☐ FAIR ☐ POOR ☐ SHOCK ☐ HEMORRHAGE ☐ COMA |

| VITAL SIGNS: TEMP 97⁰ | ORAL RECTAL | RESP. 18 | PULSE 82 | B/P 20 / 80 | RECHECK IF SYSTOLIC <100> 50 ___ / ___ |

**NATURE OF INJURY OR ILLNESS**

S - NO Comint
O - Alert - Oriented X 3 - Ambulatory
Escorted by LT. N LAISON
No Marks or bruises on body
PT. Stated I WANT A one MAN cell
I WANT the errr DR TO go ON Suicide Watch

| | ABRASION /// | CONTUSION # | BURN xx xx | FRACTURE Z Z | LACERATION / _____ SUTURES |

PROFILE RIGHT OR LEFT

RIGHT OR LEFT

**PHYSICAL EXAMINATION**

A - Doc Body Chart
P - Called S. McKinon Mental Health
TO Come See PT.

| ORDERS / MEDICATIONS / IV FLUIDS | TIME | BY |
|---|---|---|
| P- On call Psychiatrist Contacted, See order sheet | | |

**DIAGNOSIS**

**INSTRUCTIONS TO PATIENT**

| DISCHARGE DATE 10 / 2 / 07 | TIME 1200 ☐AM ☑PM | RELEASE / TRANSFERRED TO ☑DOC ☐ AMBULANCE ☐ 10-2-07 | CONDITION ON DISCHARGE ☑SATISFACTORY ☐ POOR ☐FAIR ☐ CRITICAL |

| NURSE'S SIGNATURE ___ | DATE 10-2-07 | PHYSICIAN'S SIGNATURE ___ | DATE 10/3/07 | CONSULTATION |

| INMATE NAME (LAST, FIRST, MIDDLE) | DOC# | DOB | R/S | FAC. |
| Davis, Cedric | | | | |

PHS
PRISON
HEALTH
SERVICES
INCORPORATED

# EMERGENCY

| ADMISSION DATE | | TIME | ORIGINATING FACILITY Easterling | | SICK CALL ☐ EMERGENCY |
|---|---|---|---|---|---|
| 10 / 3 / 07 | | 4:14 ☐AM ☑PM | ☐ SIR ☐ PDL ☐ ESCAPEE ☐ | | ☐ OUTPATIENT |

ALLERGIES NKA        WT-213

CONDITION ON ADMISSION
☑GOOD ☐ FAIR ☐ POOR ☐ SHOCK ☐ HEMORRHAGE ☐ COMA

VITAL SIGNS: TEMP 98.4  (ORAL/RECTAL)  RESP. 18  PULSE 50  B/P 110, 80

RECHECK IF SYSTOLIC <100> 50 ___/___

NATURE OF INJURY OR ILLNESS

S/O Inmate was seen in safe cell with string from mattress tried around his neck, string was removed from neck once Inmate was taken from safe cell. VS stable, Ф Erythema redena noted to Neck, No comment was made from Inmate. Inmate had blank stare on voice and would not acknowledgement any comments or questions addressed to him.

PHYSICAL EXAMINATION

- alt in coping
- Patient referred to Dr. Ferrell for New orders
Patient Refused to speak with Dr. Ferrell, see order sheet for New Order. Patient started to tear suicide smock once placed back in safe cell, New orders Received to place Inmate in stripped cell p Dr. Ferrell orders

| ABRASION /// | CONTUSION # | BURN ˣˣ ˣˣ | FRACTURE Z Z | LACERATION / ___ SUTURES |
|---|---|---|---|---|



PROFILE RIGHT OR LEFT

RIGHT OR LEFT

| ORDERS / MEDICATIONS / IV FLUIDS | TIME | BY |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

DIAGNOSIS

INSTRUCTIONS TO PATIENT

| DISCHARGE DATE | | TIME | RELEASE / TRANSFERRED TO | | CONDITION ON DISCHARGE |
|---|---|---|---|---|---|
| 10 / 3 / 07 | | 4:30 ☐AM ☑PM | ☐ DOC ☐ AMBULANCE ☐ | | ☑ SATISFACTORY ☐ POOR ☐ FAIR ☐ CRITICAL |

| NURSE'S SIGNATURE | DATE | PHYSICIAN'S SIGNATURE | DATE | CONSULTATION |
|---|---|---|---|---|
| McKinnon Len | | | 10/10/07 | |

INMATE NAME (LAST, FIRST, MIDDLE)

Davis, DeLuis

| | DOC# | DOB | R/S | FAC. |
|---|---|---|---|---|

**EMERGENCY**

PRISON
HEALTH
SERVICES
INCORPORATED

| ADMISSION DATE | TIME | ORIGINATING FACILITY Easterling | | |
|---|---|---|---|---|
| 10/5/07 | 5:20 AM/PM | ☐SIR ☐PDL ☐ESCAPEE ☐ | ☐SICK CALL ☐EMERGENCY ☐OUTPATIENT | |

ALLERGIES NKA          0:96%

CONDITION ON ADMISSION
☐GOOD ☐FAIR ☐POOR ☐SHOCK ☐HEMORRHAGE ☐COMA

VITAL SIGNS: TEMP 99° ORAL/RECTAL   RESP. 16   PULSE 107   BP 120/78   RECHECK IF SYSTOLIC <100> 50 ___/___

NATURE OF INJURY OR ILLNESS

"...I need to talk to somebody in MH"
- B/M ambulate to HCU
in handcuff + safe vest
escorted by Lt. Lawson +
Sgt. Wright. Two 1½"
lacerations noted to Ⓛ wrist.
Ⓛ hand covered in blood.
I/M crying + insisting on
talking to someone from
Mental Health. Was explained
to I/M that there's

| ABRASION /// | CONTUSION # | BURN XX XX | FRACTURE Z Z | LACERATION / ___ SUTURES |
|---|---|---|---|---|

PHYSICAL EXAMINATION

no one available @ this
time, that someone from
MH would talk to him
on Monday. State he's
hearing voices telling him
he's no good + to kill
himself. State he cut himself to cope with
- alt coping
- notify Dr. Stott
orders recieved
cleanse wounds c̄ Betadine + NS
apply dry dressing + steri strips

PROFILE RIGHT OR LEFT

RIGHT OR LEFT

| ORDERS / MEDICATIONS / IV FLUIDS | TIME | BY |
|---|---|---|
| Continue Suicide Watch | | |
| MH will talk to him | | |
| on Monday | | |
| Place in cell in HCU | | |

DIAGNOSIS/

INSTRUCTIONS TO PATIENT

| DISCHARGE DATE | TIME | RELEASE / TRANSFERRED TO | | CONDITION ON DISCHARGE | |
|---|---|---|---|---|---|
| 10/5/07 | 5:45 AM/PM | ☐DOC ☐AMBULANCE ☐ | | ☐SATISFACTORY ☐FAIR | ☐POOR ☐CRITICAL |

| NURSE'S SIGNATURE | DATE | PHYSICIAN'S SIGNATURE | DATE | CONSULTATION |
|---|---|---|---|---|
| M Moate LP- | 10/5/07 | Stott MD PhD | 10/10/07 | |

| INMATE NAME (LAST, FIRST, MIDDLE) | DOC# | DOB | R/S | FAC. |
|---|---|---|---|---|
| | | | B/M | 17E |

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS
MENTAL HEALTH SERVICES

# MENTAL HEALTH WATCH/RESTRAINT PROCEDURE

INTERVENTION: ☐ Mental Health Observation ☒ Suicide Watch ☐ Restraints ☐ SU Precautionary Watch

INTERVALS OBSERVED: ☐ 30 Minutes ☒ 45 Minutes ☐ other: ___ LOCATION: Behind Central

DATE OF INITIATION: 10 / 02 / 07  DATES INCLUDED: 10 / 02 / 07 to ___ / ___ / ___

| CODE | ACTIVITY | | CODE | ACTIVITY | | CODE | ACTIVITY | | CODE | ACTIVITY |
|------|----------|---|------|----------|---|------|----------|---|------|----------|
| 1. | Yelling | | 6. | Quiet | | 11. | Fluid Accepted | | 16. | Toileted |
| 2. | Struggling | | 7. | Relaxed | | 12. | Fluids Rejected | | 17. | Nursing Visit |
| 3. | Crying | | 8. | Mumbling | | 13. | Meal Accepted | | 18. | Range of Motion Exercise |
| 4. | Laughing | | 9. | Walking | | 14. | Meal Rejected | | 19. | Mental Health Visit |
| 5. | Sleeping | | 10. | Sitting | | 15. | Showering | | | |

10-2-2007 ——— 10-3-2007

| 1st shift | | | | 2nd shift | | | | 3rd shift | | |
|-----------|---|---|---|-----------|---|---|---|-----------|---|---|
| TIME | ACTIVITY CODE | STAFF NAME | | TIME | ACTIVITY CODE | STAFF NAME | | TIME | ACTIVITY CODE | STAFF NAME |
| 6:00 am | | | | 2:00 pm | 6 | M | | 10:00 pm | 6 | SSS |
| 6:15 am | | | | 2:15 pm | 6 | M | | 10:15 pm | 6 | SSS |
| 6:30 am | | | | 2:30 pm | 6 | M | | 10:30 pm | 6 | SSS |
| 6:45 am | | | | 2:45 pm | 6 | M | | 10:45 pm | 6 | SSS |
| 7:00 am | | | | 3:00 pm | 6,12,14 | M | | 11:00 pm | 6 | SSS |
| 7:15 am | | | | 3:15 pm | 6 | M | | 11:15 pm | 6 | SSS |
| 7:30 am | | | | 3:30 pm | 6 | M | | 11:30 pm | 6 | SSS |
| 7:45 am | | | | 3:45 pm | 6 | M | | 11:45 pm | 6 | SSS |
| 8:00 am | | | | 4:00 pm | 6 | M | | 12:00 am | 6 | SSS |
| 8:15 am | | | | 4:15 pm | 6 | M | | 12:15 am | 6 | SSS |
| 8:30 am | | | | 4:30 pm | 6 | M | | 12:30 am | 5 | SSS |
| 8:45 am | | | | 4:45 pm | 6 | M | | 12:45 am | 5 | SSS |
| 9:00 am | | | | 5:00 pm | 6 | M | | 1:00 am | 5 | SSS |
| 9:15 am | | | | 5:15 pm | 6 | Mastin | | 1:15 am | 5 | SSS |
| 9:30 am | | | | 5:30 pm | 6 | Mastin | | 1:30 am | 5 | SSS |
| 9:45 am | | | | 5:45 pm | 6 | Mastin | | 1:45 am | 5 | SSS |
| 10:00 am | | | | 6:00 pm | 6 | Mastin | | 2:00 am | 5 | SSS |
| 10:15 am | | | | 6:15 pm | 6 | Mastin | | 2:15 am | 5 | FLL |
| 10:30 am | | | | 6:30 pm | 6 | Mastin | | 2:30 am | 5 FL | FLL |
| 10:45 am | | | | 6:45 pm | 6 | Mastin | | 2:45 am | 6-12,11 | FLL |
| 11:00 am | | | | 7:00 pm | 6 | Mastin | | 3:00 am | 6 | FLL |
| 11:15 am | | | | 7:15 pm | 6 | Mastin | | 3:15 am | 6 | FLL |
| 11:30 am | | | | 7:30 pm | 6 | Mastin | | 3:30 am | 13-19 | FLL |
| 11:45 am | | | | 7:45 pm | 6 | Mastin | | 3:45 am | 6-9 | FLL |
| 12:00 pm | | | | 8:00 pm | 6 | Mastin | | 4:00 am | 5 | FLL |
| 12:15 pm | 6 | JL | | 8:15 pm | 6 | Mastin | | 4:15 am | 5 | FLL |
| 12:30 pm | 6 | JC | | 8:30 pm | 6 | Mastin | | 4:30 am | 5 | FLL |
| 12:45 pm | 6 | JC | | 8:45 pm | 6 | Mastin | | 4:45 am | 5 | FLL |
| 1:00 pm | 6 | JC | | 9:00 pm | 6,17 | Mastin | | 5:00 am | 5 | FLL |
| 1:15 pm | 6 | JL | | 9:15 pm | 6 | Mastin | | 5:15 am | 5 | FLL |
| 1:30 pm | 6 | JC | | 9:30 pm | 6 | Mastin | | 5:30 am | 5 | FLL |
| 1:45 pm | 6 | JC | | 9:45 pm | 6 | Mastin | | 5:45 am | 5 | FLL |

| INMATE NAME: Cedric Davis | AIS#: B 233423 |
|---|---|

PROPERTY PERMITTED: ___

Reference: ADOC AR: 638, 630, 631, 623

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS
MENTAL HEALTH SERVICES

# MENTAL HEALTH WATCH/RESTRAINT PROCEDURE

INTERVENTION: ? Mental Health Observation ? Suicide Watch ? Restraints ? SU Precautionary Watch
INTERVALS OBSERVED: ? 30 Minutes ? 15 Minutes ? other: ___ LOCATION: behind Central
DATE OF INITIATION: 10 / 2 / 07 DATES INCLUDED: 10 / 3 / 07 to _/_/_

| CODE | ACTIVITY | CODE | ACTIVITY | CODE | ACTIVITY | CODE | ACTIVITY |
|---|---|---|---|---|---|---|---|
| 1. | Yelling | 6. | Quiet | 11. | Fluid Accepted | 16. | Toileted |
| 2. | Struggling | 7. | Relaxed | 12. | Fluids Rejected | 17. | Nursing Visit |
| 3. | Crying | 8. | Mumbling | 13. | Meal Accepted | 18. | Range of Motion Exercise |
| 4. | Laughing | 9. | Walking | 14. | Meal Rejected | 19. | Mental Health Visit |
| 5. | Sleeping | 10. | Sitting | 15. | Showering | | |

| TIME | 1st shift ACTIVITY CODE | STAFF NAME | TIME | 2nd shift ACTIVITY CODE | STAFF NAME | TIME | 3rd shift ACTIVITY CODE | STAFF NAME |
|---|---|---|---|---|---|---|---|---|
| 6:00 am | 5 | me | 2:00 pm | 6 | CF | 10:00 pm | | |
| 6:15 am | 5 | me | 2:15 pm | 6 | CF | 10:15 pm | | |
| 6:30 am | 5 | me | 2:30 pm | 19 | CF | 10:30 pm | | |
| 6:45 am | 5 | me | 2:45 pm | 6 | CF | 10:45 pm | | |
| 7:00 am | 6,19,15 | me | 3:00 pm | 12,13,6 | CF | 11:00 pm | | |
| 7:15 am | 5 | me | 3:15 pm | 6 | CF | 11:15 pm | | |
| 7:30 am | 6 | me | 3:30 pm | 6 | CF | 11:30 pm | | |
| 7:45 am | 6 | me | 3:45 pm | 6 | CF | 11:45 pm | | |
| 8:00 am | 6 | me | 4:00 pm | 6 | CF | 12:00 am | | |
| 8:15 am | 6 | T.Bailey | 4:15 pm | | | 12:15 am | | |
| 8:30 am | 6 | T.Bailey | 4:30 pm | | | 12:30 am | | |
| 8:45 am | 6 | T.Bailey | 4:45 pm | | | 12:45 am | | |
| 9:00 am | 6 | T.Bailey | 5:00 pm | | | 1:00 am | | |
| 9:15 am | 6 | T.Bailey | 5:15 pm | | | 1:15 am | | |
| 9:30 am | 6 | T.Bailey | 5:30 pm | | | 1:30 am | | |
| 9:45 am | 6 | T.Bailey | 5:45 pm | | | 1:45 am | | |
| 10:00 am | 6 | T.Bailey | 6:00 pm | | | 2:00 am | | |
| 10:15 am | 6 | T.Bailey | 6:15 pm | | | 2:15 am | | |
| 10:30 am | 6 | T.Bailey | 6:30 pm | | | 2:30 am | | |
| 10:45 am | 6 | T.Bailey | 6:45 pm | | | 2:45 am | | |
| 11:00 am | 6 | T.Bailey | 7:00 pm | | | 3:00 am | | |
| 11:15 am | 6 | T.Bailey | 7:15 pm | | | 3:15 am | | |
| 11:30 am | 6 | T.Bailey | 7:30 pm | | | 3:30 am | | |
| 11:45 am | 6 | T.Bailey | 7:45 pm | | | 3:45 am | | |
| 12:00 pm | 6 | T.Bailey | 8:00 pm | | | 4:00 am | | |
| 12:15 pm | 6 | T.Bailey | 8:15 pm | | | 4:15 am | | |
| 12:30 pm | 6 | T.Bailey | 8:30 pm | | | 4:30 am | | |
| 12:45 pm | 6 | T.Bailey | 8:45 pm | | | 4:45 am | | |
| 1:00 pm | 6 | T.Bailey | 9:00 pm | | | 5:00 am | | |
| 1:15 pm | 6 | T.Bailey | 9:15 pm | | | 5:15 am | | |
| 1:30 pm | 6 | T.Bailey | 9:30 pm | | | 5:30 am | | |
| 1:45 pm | 6 | T.Bailey | 9:45 pm | | | 5:45 am | | |

INMATE NAME: Cedric Davis                    9/m        AIS# 233423

PROPERTY PERMITTED : _____

Disposition: Inmate Medical Record

Reference: ADOC AR: 638, 630, 631, 623

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS
MENTAL HEALTH SERVICES

# MENTAL HEALTH WATCH/RESTRAINT PROCEDURE

INTERVENTION: ☐ Mental Health Observation ☑ Suicide Watch ☐ Restraints ☐ SU Precautionary Watch

INTERVALS OBSERVED: ☐ 30 Minutes ☐ 15 Minutes ☐ Other: _____ LOCATION: _____

DATE OF INITIATION: 10/3/07 DATES INCLUDED: 10/3/07 to __/__/__

| CODE | ACTIVITY | | CODE | ACTIVITY | | CODE | ACTIVITY | | CODE | ACTIVITY |
|------|----------|---|------|----------|---|------|----------|---|------|----------|
| 1. | Yelling | | 6. | Quiet | | 11. | Fluid Accepted | | 16. | Toileted |
| 2. | Struggling | | 7. | Relaxed | | 12. | Fluids Rejected | | 17. | Nursing Visit |
| 3. | Crying | | 8. | Mumbling | | 13. | Meal Accepted | | 18. | Range of Motion Exercise |
| 4. | Laughing | | 9. | Walking | | 14. | Meal Rejected | | 19. | Mental Health Visit |
| 5. | Sleeping | | 10. | Sitting | | 15. | Showering | | | |

| 1st shift | | | 2nd shift | | | 3rd shift | | |
|-----------|---|---|-----------|---|---|-----------|---|---|
| TIME | ACTIVITY CODE | STAFF NAME | TIME | ACTIVITY CODE | STAFF NAME | TIME | ACTIVITY CODE | STAFF NAME |
| | | | 2:00 pm | | | 10:00 pm | 5 | KW |
| | | | 2:15 pm | | | 10:15 pm | 5 | W7 |
| 6:00 am | | | 2:30 pm | | | 10:30 pm | 5 | W7 |
| 6:15 am | | | 2:45 pm | | | 10:45 pm | 5 | W7 |
| 6:30 am | | | 3:00 pm | | | 11:00 pm | 5 | W7 |
| 6:45 am | | | 3:15 pm | | | 11:15 pm | 5 | W7 |
| 7:00 am | | | 3:30 pm | | | 11:30 pm | 5 | W7 |
| 7:15 am | | | 3:45 pm | | | 11:45 pm | 5 | KW |
| 7:30 am | | | 4:00 pm | | | 12:00 am | 5 | KW |
| 7:45 am | | | 4:15 pm | | | 12:15 am | 5 | W7 |
| 8:00 am | | | 4:30 pm | | | 12:30 am | 5 | W7 |
| 8:15 am | | | 4:45 pm | 6 | D. Bell | 12:45 am | 5 | W7 |
| 8:30 am | | | 5:00 pm | 6 | L.G. | 1:00 am | 5 | W7 |
| 8:45 am | | | 5:15 pm | 10 | L.G. | 1:15 am | 5 | W7 |
| 9:00 am | | | 5:30 pm | 10 | L.G. | 1:30 am | 5 | W7 |
| 9:15 am | | | 5:45 pm | 9 | L.G. | 1:45 am | 5 | W7 |
| 9:30 am | | | 6:00 pm | 9 | L.G. | 2:00 am | 5 | W7 |
| 9:45 am | | | 6:15 pm | 9 | L.G. | 2:15 am | 5 | W7 |
| 10:00 am | | | 6:30 pm | 10 | L.G. | 2:30 am | 5 | W7 |
| 10:15 am | | | 6:45 pm | 10 | L.G. | 2:45 am | 5 | W7 |
| 10:30 am | | | 7:00 pm | 8 | L.G. | 3:00 am | 5 | W7 |
| 10:45 am | | | 7:15 pm | 6 | L.G. | 3:15 am | 6 | KW |
| 11:00 am | | | 7:30 pm | 10 | L.G. | 3:30 am | 5 | KW |
| 11:15 am | | | 7:45 pm | 10 | L.G. | 3:45 am | 5 | KW |
| 11:30 am | | | 8:00 pm | 6 | L.G. | 4:00 am | 5 | KW |
| 11:45 am | | | 8:15 pm | 10 | L.G. | 4:15 am | 5 | KW |
| 12:00 pm | | | 8:30 pm | 10 | L.G. | 4:30 am | 5 | W7 |
| 12:15 pm | | | 8:45 pm | | | 4:45 am | 5 | W7 |
| 12:30 pm | | | 9:00 pm | 9 | L.G. | 5:00 am | 5 | W7 |
| 12:45 pm | | | 9:15 pm | 13,9 | L.G. | 5:15 am | 5 | W7 |
| 1:00 pm | | | 9:30 pm | 9 | L.G. | 5:30 am | 5 | W7 |
| 1:15 pm | | | 9:45 pm | 7 | L.G. | 5:45 am | 5 | W7 |
| 1:30 pm | | | | | B/M | AIS#: 233423 | | |
| 1:45 pm | | | | | | | | |

CEDZC DAVZS

### STATE OF ALABAMA
### DEPARTMENT OF CORRECTIONS
### MENTAL HEALTH SERVICES

# MENTAL HEALTH WATCH/RESTRAINT PROCEDURE

INTERVENTION: ☐Mental Health Observation ☐Suicide Watch ☐Restraints ☐SU Precautionary Watch

INTERVALS OBSERVED: ☐ 30 Minutes ☑15 Minutes ☐other: ___ LOCATION: _SEGREGATION_

DATE OF INITIATION: _10/4/07_ DATES INCLUDED: ___/___/___ to ___/___/___

| CODE | ACTIVITY | | CODE | ACTIVITY | | CODE | ACTIVITY | | CODE | ACTIVITY |
|------|----------|---|------|----------|---|------|----------|---|------|----------|
| 1. | Yelling | | 6. | Quiet | | 11. | Fluid Accepted | | 16. | Toileted |
| 2. | Struggling | | 7. | Relaxed | | 12. | Fluids Rejected | | 17. | Nursing Visit |
| 3. | Crying | | 8. | Mumbling | | 13. | Meal Accepted | | 18. | Range of Motion Exercise |
| 4. | Laughing | | 9. | Walking | | 14. | Meal Rejected | | 19. | Mental Health Visit |
| 5. | Sleeping | | 10. | Sitting | | 15. | Showering | | | |

| TIME | 1st shift ACTIVITY CODE | STAFF NAME | | TIME | 2nd shift ACTIVITY CODE | STAFF NAME | | TIME | 3rd shift ACTIVITY CODE | STAFF NAME |
|------|------|------|---|------|------|------|---|------|------|------|
| 6:00 am | 5 | DF | | 2:00 pm | 6 | D Bell | | 10:00 pm | 6 | SS |
| 6:15 am | 5 | DF | | 2:15 pm | 6 | D Bell | | 10:15 pm | 6 | SS |
| 6:30 am | 5 | DF | | 2:30 pm | 6 | D Bell | | 10:30 pm | 6 | SS |
| 6:45 am | 5 | DF | | 2:45 pm | 6 | D Bell | | 10:45 pm | 6 | SS |
| 7:00 am | 5 | DF | | 3:00 pm | 6 | WD | | 11:00 pm | 6 | SS |
| 7:15 am | 6 | DF | | 3:15 pm | 6 | WD | | 11:15 pm | 6 | SS |
| 7:30 am | 6 | DF | | 3:30 pm | 6 | WD | | 11:30 pm | 6 | SS |
| 7:45 am | 6 | DF | | 3:45 pm | 6 | WD | | 11:45 pm | 6 | SS |
| 8:00 am | 6 | DB | | 4:00 pm | 6 | WD | | 12:00 am | 6 | SS |
| 8:15 am | 6 | DF | | 4:15 pm | 11,14 | WD | | 12:15 am | 5 | SS |
| 8:30 am | 6 | DF | | 4:30 pm | 6 | D Bell | | 12:30 am | 5 | SS |
| 8:45 am | 6 | DF | | 4:45 pm | 6 | D Bell | | 12:45 am | 5 | SS |
| 9:00 am | 6 | DF | | 5:00 pm | 6 | D Bell | | 1:00 am | 5 | SS |
| 9:15 am | 6 | DF | | 5:15 pm | 6 | D Bell | | 1:15 am | 5 | SS |
| 9:30 am | 6 | D I | | 5:30 pm | 6 | D Bell | | 1:30 am | 5 | SS |
| 9:45 am | 6 | DF | | 5:45 pm | 6 | D Bell | | 1:45 am | 5 | SS |
| 10:00 am | 11,13 | DF | | 6:00 pm | 6 | D Bell | | 2:00 am | 5 | SS |
| 10:15 am | 6 | DF | | 6:15 pm | 6 | D Bell | | 2:15 am | 5 | SS |
| 10:30 am | 6 | DF | | 6:30 pm | 6 | D Bell | | 2:30 am | 5 | SS |
| 10:45 am | 5 | DF | | 6:45 pm | 6 | D Bell | | 2:45 am | 5 | SS |
| 11:00 am | 5 | DF | | 7:00 pm | 6 | D Bell | | 3:00 am | 17 | SS |
| 11:15 am | 5 | DF | | 7:15 pm | 6 | D Bell | | 3:15 am | 6 | SS |
| 11:30 am | 5 | DF | | 7:30 pm | 6 | D Bell | | 3:30 am | 6 | SS |
| 11:45 am | 5 | DF | | 7:45 pm | 6 | D Bell | | 3:45 am | 6,13 | SS |
| 12:00 pm | 5 | DF | | 8:00 pm | 6 | D Bell | | 4:00 am | 6 | SS |
| 12:15 pm | 5 | DF | | 8:15 pm | 6 | D Bell | | 4:15 am | 6 | SS |
| 12:30 pm | 5 | DF | | 8:30 pm | 6 | D Bell | | 4:30 am | 6 | SS |
| 12:45 pm | 5 | DF | | 8:45 pm | 6 | D Bell | | 4:45 am | 6 | SS |
| 1:00 pm | 17 | DF | | 9:00 pm | 6 | D Bell | | 5:00 am | 6 | SS |
| 1:15 pm | 7,19 | DF | | 9:15 pm | 6 | D Bell | | 5:15 am | 6 | SS |
| 1:30 pm | 6 | DF | | 9:30 pm | 6 | D Bell | | 5:30 am | 6 | SS |
| 1:45 pm | 6 | DF | | 9:45 pm | 6 | D Bell | | 5:45 am | 6 | SS |

| INMATE NAME: | | AIS#: |
|---|---|---|

# SEGREGATION UNIT CELL INSPECTION SHEET

DATE: _10-3-07_

INMATE NAME/CELL #: _Cedric Davis   B-26_

INSPECTED BY: _D. Bell CO_

**E= EXCELLENT        G= GOOD        A= AVERAGE        P= POOR**

| | | COMMENTS | |
|---|---|---|---|
| BED | E G A P | | no bed (suicide watch) |
| MATTRESS | E G A P | COMMENTS | |
| PILLOW | E G A P | COMMENTS | |
| LIGHTS | E G A P | COMMENTS | no pillow. |
| HEATING VENT | E G A P | COMMENTS | |
| CELL WALLS | E G A P | COMMENTS | |
| FLOOR | E G A P | COMMENTS | |
| DOOR | E G A P | COMMENTS | |
| WINDOW | E G A P | COMMENTS | |
| TOILET | E G A P | COMMENTS | |

NOTE:  It is the responsibility of the inmate to ensure they maintain their cell in a clean and sanitary manner.  Any inmate failing to maintain their cell in a clean and sanitary manner or any inmate found to have damaged any Department of Corrections property will be subject to disciplinary action.  Additionally, inmates are to immediately report any cell discrepancies to the Segregation Officers.

(Suicide watch)  D. Bell CO

INMATE SIGNATURE / DATE

ECF
(INSTITUTION)

SEGREGATION UNIT ASSIGNMENT SHEET

INMATE NAME: _Cedric Davis_              SERIAL NO: _233423_  CELL: _B-26_
VIOLATION                                ADMITTANCE
OR REASON: _investigation #38 & suicide watch_ AUTHORIZED BY: _Lt Lawson_
DATE & TIME                              DATE & TIME
RECEIVED: _10-3-07   4:45pm_             RELEASED: _____

. Upon my assignment to segregation, I hereby receipt for the following issue of items
and/or acknowledge the following conditions of my cell and installed equipment:

ISSUE

| ITEM | QUANTITY | ITEM | QUANTITY | ITEM | QUANTITY |
|---|---|---|---|---|---|
| ~~ed~~ | 0 | Drinking Cup | 0 | | |
| ~~attress~~ | 1 | Spoon (Plastic) | 0 | Toothpaste | 0 |
| ~~illow~~ | 0 | Toilet Paper | 0 | Shaving Cream | 0 |
| ~~ed Sheet~~ | 0 | Comb | 0 | Bar of Soap | 0 |
| ~~anket~~ | 0 | Razor | 0 | | |
| ~~wel~~ | 0 | Toothbrush | 0 | | |

CONDITION

_Yes_ Cell was clean.    _Yes_ Toilet was clean and operating.

_Yes_ Lavatory was clean with hot and cold running water.

_Yes_ Lighting was operational.    _Yes_ Heating and Ventilation operational.

I acknowledge that I am obligated to maintain my cell and installed equipment in
same state of cleanliness as it was upon my assignment and to economically utilize
care for the items issued to me. I acknowledge that self-destruction or negligible
te of any items of issue or installed equipment will subject me to do without such
ms of issue or installed equipment while assigned to segregation and/or subject me
disciplinary action. I further acknowledge that I am obligated to maintain an .
eptable standard of personal physical hygiene.

_(Suicide Watch)_ D. Bell Co
Signature of Inmate

anation for any items not issued: _Will be issued on a needed basis_

_Daniel Bell  CO_
Signature of OIC who witnessed
inventory by Inmate

f inmate "refuses to sign" such fact will .

# MENTAL HEALTH UNIT
## PATIENT INFORMATION SLIP

Easterling
INSTITUTION

Davis Cedric _____    233423    Blm
NAME                                NUMBER    R/S

Lay-in for _____ days from _____ to
                                         (date)

_____ due to _____
              (date)

Place on suicide Watch In safe cell
Na have Suicide (gown, blanket + Mattress)
NS Personal belongings or sharp objects

Instructions: Sack meals only

_____

_____

_____

*Failure to follow the directions above may result in a disciplinary.*

10/2/07 _____        Dr. Hunter Kmckinnon LPN
Date Issued                    Signature

12:14 PM