IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

CEDRIC DAVIS, 233423,

        Plaintiff,

v.                                Case No. 2:07-CV-1061-WHA

CARTER DAVENPORT, et al,

        Defendants.

## SPECIAL REPORT OF CORRECTIONAL DEFENDANTS DAVENPORT, WRIGHT AND FOSTER

        Come now the Correctional Defendants, Carter Davenport, Gerald Wright and Charles Foster, by and through counsel, Troy King, Attorney General of Alabama, and Jack Wallace, Jr., Assistant Attorney General, to file this, their special report in accordance with the Court's order of 6 December 2007.

## PARTIES

1.   The Plaintiff is Cedric Davis, 233423, who is incarcerated at the Easterling Correctional Facility (ECF) of the Alabama Department of Corrections (ADOC) in Clio, Alabama.

2.   Defendant Carter Davenport is employed by ADOC as a Warden II at the ECF.

3.   Defendant Gerald Wright is employed by ADOC as a Correctional Sergeant at ECF.

4.   Defendant Charles Foster is employed by ADOC as a Correctional Officer at ECF.

5.   Defendant Jemeka Caffie is not employed by ADOC but rather works for the medical vendor(s) providing either medical or mental health care to inmates at ECF.

6.  Defendant "Ms Foster" is not employed by ADOC but rather works for the medical vendor(s) providing either medical or mental health care to inmates at ECF.

7.  Defendant "Nurse McKinnon" is not employed by ADOC but rather works for the medical vendor(s) providing either medical or mental health care to inmates at ECF.


## PLAINTIFF'S ALLEGATIONS

Presumably the Plaintiff brings this civil action pursuant to 42 U.S.C. § 1983.  He asserts both state claims and violations of his Eight Amendment Rights.  He seeks compensatory damages, punitive damages and injunctive relief from the Defendants in both their individual and official capacities.

The Plaintiff states in his complaint the following factual allegations.

On or about October 3, 2007, Plaintiff was an inmate of Easterling Correctional in Clio, Alabama and was being housed in the administration building, Isolation Cell Suicide Watch.

That on said date, Plaintiff attempted suicide while in Isolation Cell, by placing a string around his neck, and Defendant Officer Foster was the officer assigned to the administration building at that time.

That while Plaintiff was making suicide attempt Defendant's Officer Foster, Mrs. Caffie, Ms Foster, and Ms McKinnon stood by laughing and making jokes.

That Plaintiff was stopped by Defendant's Officer Foster and Sgt. Wright and placed in handcuffs and taken to Defendant McKinnon for body chart to document injuries.

That while Plaintiff was being checked out by Nurse McKinnon, Defendant Davenport walked up asking what happened.  He was told by Defendant McKinnon what happened, and she Defendant McKinnon then stated to Defendant Davenport that she being Mental Health Nurse, believed that the Plaintiff needed to be placed in the Healthcare Isolation Cell under close watch.  Then Defendant Davenport told Nurse McKinnon that

Plaintiff would be placed back in the cell from which he came and that Plaintiff is not suicidal.  The Defendant Davenport starts taunting the Plaintiff and telling him that he is not suicidal and that the mental health personnel was trying to help him the Plaintiff, but all he Defendant Davenport wanted to do was be a butthole to the Plaintiff.

That Defendant's placed Plaintiff in segregation unit with other inmates while Plaintiff was still suppose to be on suicide watch and Plaintiff was able to obtain a razor and cut his wrist.

Based upon these facts, the Plaintiff alleges that he was negligently and wantonly allowed to be placed in an unsafe environment so that the Plaintiff could be injured.  He states that the Defendants were negligent by allowing him to be placed in a cell where he obtained a razor and attempted suicide.  The Plaintiff further alleges on page three of his addendum to the printed complaint that the Defendants violated his Eight Amendment Right to be free of cruel and unusual punishment by their negligent acts that were done "maliciously, sadistically, wantonly and without care to cause harm to the Plaintiff."

## **DEFENDANTS' RESPONSE TO ALLEGATIONS**

1.    The Plaintiff failed to state a claim upon which relief can be granted pursuant to 42 USC §1983 or any other cause of action.

2.    Defendants assert that there is no evidence to support Plaintiff's claims.

3.    Defendants assert Plaintiff has failed to show there is any genuine issue of material fact in this case.

4.    Defendants deny that any of Plaintiff's constitutional rights have been violated.

5.    Defendants deny all material allegations not expressly admitted herein and demands strict proof thereof.

6.    Defendants assert the defenses of sovereign immunity and qualified immunity.

7.      Under 42 U.S.C. §1983 respondeat superior is not available to find an individual liable.

8.      Defendants assert immunity pursuant to Article 1, Section 14 of the Constitution of Alabama 1901 and the Eleventh Amendment to the United States Constitution.

9.      Defendants assert State discretionary immunity.

10.     The Plaintiff suffered only de minimus injuries.

11.     Defendants assert immunity pursuant to § 6-5-338 of the Code of Alabama.

12.     The Defendants plead contributory negligence.


## DEFENDANT'S EXHIBITS

In accordance with this Court's Order, the Defendant submits the following exhibits:

1.      Exhibit A is the affidavit of Defendant Charles Foster.

2.      Exhibit B is the affidavit of Defendant Gerald Wright.

3.      Exhibit C is the affidavit of Defendant Carter Davenport.

4.      Exhibit D is the affidavit of Witness Willie Bryant, employed by ADOC as an administrative lieutenant at ECF.


## STATEMENT OF UNCONTESTED FACTS

The Plaintiff was an inmate at Easterling Correctional Facility at all times pertinent to his complaint. "On or about October 3rd 2007, Plaintiff was an inmate at Easterling Correctional in Clio, Alabama and was being hoursed in the administration building, Isolation Cell Suicide Watche." Complaint, second paragraph, page 1 of Affidavit and Attestation.

Witness Willie Bryant, who is employed as an administrative lieutenant at ECF by ADOC, testified about the events in Exhibit D which consists of his affidavit and four supporting exhibits. Among the documents relied upon by Bryant in his affidavit is the Incident Report, dated 3 October 2007, that states in the narrative summary, block 15, that:

> On October 3, 2007, Officer Charles Foster was assigned as the Administration Rover. At approximately 4:05 PM, Officer Foster was conducting a security check in the Administration Building. Inmate Cedrick Davis, B/233423, was housed in the Administration Building safe cell. Officer Foster observed inmate Davis standing on the toilet with one end of a white string around his (Inmate Davis) neck. The other end of the string was tied to the top of the door frame of the Safe Cell. At approximately 4:07 PM, Officer Foster reported the incident to Sgt Gerald Wright. At approximately 4:10 PM Sgt. Wright entered the Administration Building and proceeded to the Safe Cell. Sgt. Wright ordered inmate Davis to place his hands through the tray door to be handcuffed. Inmate Davis complied with the order. Officer Foster placed handcuffs on Inmate Davis. Sgt. Wright and Officer Foster removed Inmate Davis from the Safe Cell. At approximately 4:14 PM, Nurse Sharon McKinnon examined Inmate Davis in the Administration Building (see attached medical report). At approximately 4:30 PM Inmate Davis was released by Nurse McKinnon and placed back in the Safe Cell. At approximately 4:35 PM, Officer Foster was conducting a security check on Inmate Davis in the Safe Cell. Officer Foster observed Inmate Davis tearing the suicide mat in the Safe Cell. At approximately 4:37 PM, Officer Foster advised Sgt. Wright that Inmate Davis was destroying the mat inside his cell. Sgt Wright proceeded to Inmate Davis' cell. Sgt Wright ordered Inmate Davis to place his hands through the tray door to be handcuffed. Inmate Davis did not comply with the order. At approximately 4:40 PM, Sgt. Wright ordered Central Control to open the Safe Cell door. Sgt Wright ordered Inmate Davis to face the wall inside the Safe Cell and place his hands behind his back. Inmate Davis complied with the order. Officer Foster placed handcuffs on Inmate Davis. Inmate Davis was removed from the Safe Cell by Sgt Wright and Officer Foster. At approximately 4:45 PM, Warden Carter Davenport and Sgt Wright escorted Inmate Davis to the Segregation Unit. Inmate Davis was placed in the Administrative Segregation for R/V #62-Intentionally Creating a Security, Safety or Health Hazard and R/V #69, Destroying, Stealing, Disposing, Altering, Damaging or Selling State Property. No further action taken.

As a result of the events set forth above, Bryant testified that the Plaintiff was moved to a single cell in the Segregation unit on 3 October 2007 where he was placed on Mental Health watch.  The Plaintiff was not housed with other inmates but was alone in a cell.  (Exhibit D).  To substantiate his testimony, Bryant attached as Exhibit 2 to his affidavit, copies of ADOC Mental Health Watch/Restraint Procedure Forms dated 3 and 4 October that record the conditions of the Mental Health watch.  The Plaintiff was alone in a cell when he was on suicide watch, being checked upon once every 15 minutes.

The Plaintiff was still on Suicide Watch in the single cell of the Segregation Unit on 5 October 2007 when the Plaintiff cut himself with a razor.  Bryant testified in Exhibit D that:

> On October 5, 2007, during a security check of Inmate Davis' cell, Officer Larry McCovery observed Inmate Davis' left wrist bleeding and that Inmate Davis had a razor in this right hand (Exhibit 3).  The Shift Commander was notified of the incident.  Shift Commander Nathaniel ordered Inmate Davis to drop the razor blade.  Inmate Davis did not comply with the order and put the razor blade in this mouth and backed up to the cell door to be restrained with handcuffs.  Inmate Davis did not comply with the order and put the razor blade in this mouth and backed up to the cell door to be restrained by handcuffs.  ,After Inmate Davis was restrained , Lt. Lawson ordered Inmate Davis to spit the razor blade out.  Inmate Davis refused and put the razor between his lips.  The razor blade was removed by Officer William Davis.  Inmate Davis was taken to the Health Care Unit for treatment (Exhibit 4).  Inmate Davis was questioned about the razor blade and refused to tell where he got the razor blade.  Inmate Davis has not been treated unfairly by [Lt Foster] or anyone else.

The Plaintiff states in his complaint that Defendant Davenport taunted him and verbally abused him after his suicide attempt using the string.  However, Defendant Gerald Wright, the Correctional Sergeant on the scene on 3 October 2007 stated in his affidavit, Exhibit B, that

> [D]uring Inmate Davis's examination [after the string attempt], Warden Carter F. Davenport entered the lobby.  Warden Davenport was advised of the incident.  Warden Davenport

6

questioned Inmate Davis about the incident.  Inmate Davis would
not respond and continued to be non-verbal.

Both Defendants Foster, who wrote the Incident Report narrative on 3 October 2007 which is quoted above, and Wright testified by affidavits, Exhibits A and B, respectively, that they took efforts to preserve the life of the Plaintiff after he was discovered by Defendant Foster standing on the toilet with the string around his neck with one end tied to the door frame of the Safe Cell in the Administration Unit where the Plaintiff was on suicide watch.  They got him down before he took the plunge, restrained him and then carried him to the medical clinic for evaluation.  They then placed him in isolation in a single cell on suicide watch, first returning him to the Safe Cell in Administration Unit but then subsequently moving him to a single cell in the Segregation unit after he began to destroy items in the Safe Cell.  At all times, the Plaintiff was on suicide watch.

## ARGUMENT

The Plaintiff seeks damages as well as injunctive relief in this action which was filed pursuant to 42 U.S.C. § 1983 which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

**I.  Eighth Amendment and State Negligence Claims**

The Plaintiff attempted suicide twice within a period of 2-3 days and avers that the Defendants were deliberately indifferent to his serious medical needs and therefore violated his Eighth Amendment right to be free of cruel and unusual punishment.  In this § 1983 civil action, the Plaintiff repeatedly couches his averments in terms of negligence and wantonness of the Defendants.  Negligence is not actionable pursuant to 42 U.S.C. § 1983.  "[N]egligent conduct does not give rise to § 1983 liability for resulting unintended loss of or injury to life, liberty, or property." *Cannon v. Macon County,* 1 F.3d 1558, 1563 (11th Cir.1993).  Thus, his allegations of negligence fail to state a claim for which relief can be granted and are due to be dismissed.

To the extent that the Plaintiff attempts to aver state claims of negligence, his complaint fails to state a cause of action for which relief can be granted because he states only his conclusory allegations, not statements of fact, to support his allegations.

The Defendants further plead the affirmative defense of contributory negligence.  Contributory negligence on the part of a plaintiff which proximately contributes to the plaintiff's injuries will bar recovery. *Brown v. Piggly-Wiggly Stores,* 454 So.2d 1370 (Ala.1984). However, the defendant must plead and prove contributory negligence:

> "The burden was upon the [defendant] to prove its plea of contributory negligence.  Contributory negligence is matter purely defensive under our decisions, and it follows that there are no presumptions against a plaintiff of a want of due care and diligence on his part, and there is no burden on the plaintiff to prove affirmatively that he exercised due care and diligence."

*Alabama Great Southern R.R. v. Evans,* 288 Ala. 25, 30, 256 So.2d 861, 865 (1972); *American Furniture Galleries, Inc. v. McWane,* 477 So.2d 369 (Ala.1985); *United States Fidelity & Guaranty Co. v. Jones*, 356 So.2d 596 (Ala.1977).

8

While the question of contributory negligence is normally one for the jury, it has been held that "Where the facts are such that all reasonable [people] must reach the same conclusion, contributory negligence may be found as a matter of law." *Brown v. Piggly-Wiggly Stores, supra, at 1372.* See Alabama Digest, Negligence, Key No. 136(26). Conversely, if a defendant does not present a scintilla of evidence of contributory negligence, he should not be entitled to submit the question to the jury. *Banks v. Harbin,* 500 So.2d 1027 (Ala.1986).

The Defendant contend that the Plaintiff's determined efforts to kill himself or to at least go through the motions of attempted suicide constitute negligence that contributed to his injuries and therefore he is barred from any recovery based upon state law claims of negligence.

A prison official may be held liable for failing to prevent harm to a prisoner if he is deliberately indifferent to the prisoner's health or safety. *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1994).   To establish liability for a prisoner's suicide under section 1983, "the plaintiff must show that the jail official displayed 'deliberate indifference' to the prisoner's taking of his own life." *Cook,* 402 F.3d at 1115 (quoting *Cagle v. Sutherland,* 334 F.3d 980, 986 (11th Cir.2003) (per curiam)) (internal quotation mark omitted). The plaintiff must prove that the official had subjective knowledge of a risk of serious harm and disregarded that risk by conduct that constituted more than mere negligence. *Snow ex rel. Snow v. City of Citronelle, Ala.,* 420 F.3d 1262, 1268 (11th Cir.2005) (quoting *Cook,* 402 F.3d at 1115). "[D]eliberate indifference requires that the defendant deliberately disregard 'a strong likelihood rather than a mere possibility that the self-infliction of harm will occur.' " *Cook,* 402 F.3d 1115 (quoting *Cagle,* 334 F.3d at 986) (emphasis omitted). "[T]he mere opportunity for suicide without more, is clearly insufficient to impose liability on those charged with the care of prisoners." *Tittle v. Jefferson County Comm'n,* 10 F.3d 1535, 1540 (11th Cir.1994) (en banc).

The Plaintiff's allegations are unsupported by the evidence in this case. The uncontested material facts are that the Plaintiff attempted suicide twice. The timely intervention of the Defendants in each instance prevented the Plaintiff from taking his life.

Defendant Carter Davenport is employed as a warden II at ECF by ADOC. He did not participate in the events that unfolded in the Safe cell of the Administrative Unit when the Plaintiff attempted to hang himself but did try to talk with the Plaintiff after his examination by the medical professionals on 3 October 2007. The Plaintiff accuses Davenport of trying to interfere with the placement of the Plaintiff on suicide watch. This allegation is refuted by institutional records that show that the Plaintiff was returned to the Safe Cell of the Administration Building in which he had been placed on 2 October for suicide watch and that upon his return to the Safe Cell he was continued under suicide watch until such time that he began to destroy items in that cell. Thereafter he was taken to a single cell of the Segregation unit where the suicide watch was continued. In the Segregation unit, the Plaintiff was checked upon every 15 minutes. Plainly, Defendant Davenport did not interfere with the cloak of safety that the prison officials placed around the Plaintiff.

Furthermore, the Plaintiff alleges that Warden Davenport taunted him and verbally abused him when he attempted to talk to the Plaintiff on 3 October. No evidence is offered by the Plaintiff to substantiate either allegation beyond his bare assertions of fact that are contradicted by institutional records and by the testimony of other witnesses and defendants.

Defendant Charles Foster, a Correctional Officer at ECF, is alleged to have negligently stood around and laughed when the Plaintiff attempted to hang himself with a thread or string pulled from his mattress. The Plaintiff alleges that Defendant Foster subjected him to cruel and unusual punishment in some ill defined manner by his actions. Yet, even the Plaintiff admits in

his complaint that "Plaintiff was stopped [from committing suicide] by Defendant's Officer Foster"

Likewise with Defendant Gerald Wright who was the Correctional Sergeant on duty on 3 October 2007 when the Plaintiff attempted to "string" himself up. The Plaintiff admits in his complaint that Defendant Wright, together with Defendant Foster, stopped the Plaintiff from committing suicide.

The Plaintiff then alleges that the Defendants Foster and Wright, perhaps Davenport too, were negligent because they placed him in a cell where he was with other prisoners and was able to obtain the razor that he used on 5 October to cut himself. Yet, there are no facts averred by the Plaintiff, merely his bare allegations. While he speaks of the duty owed to him by the Defendants to protect his safety and then concludes that they breached their duty, he does not set forth the first fact, credible or un-credible, to show how they breached their duty to him. It should be noted that he was not placed in a cell with others but was in fact placed in a single cell under suicide watch. In fact, it does not appear that Defendant Foster are assigned to the segregation unit where the Plaintiff was held and therefore would not have had the responsibility to monitor his safety while there. The incident report, ECF - 07- 1092 states that Foster was assigned as the Administrative Building Rover on 3 October. The incident report concerning the razor incident, EFC-07-1091 states that Officer McCovery was assigned as the Segregation Unit Rover.

Succinctly stated, there is no evidence that the Defendants were deliberately indifferent to the Plaintiff's serious medical needs. Quite to the contrary, they recognized his plight and took action to save his life in each case.

## II.  Immunity Issues

Each of the Defendants, Davenport, Foster and Wright are sued individually as well as in their official capacity.  To the extent that they are sued in their official capacities, Defendants Davenport, Wright and Foster Defendant Bullard, have asserted that they are immune from suit pursuant to the Eleventh Amendment and § 14, Alabama Constitution of 1901.  When a government defendant is sued in his official capacity under federal law, the claim is treated as a claim directly against the state or local government entity.  Consequently the Defendant is protected by sovereign immunity under the Eleventh Amendment for claims for money damages against him in his official capacity.  *Jackson v. Georgia Dep't of Trans., 16 F 3d 1573, 1575 (11th Cir. 1994); Lancaster v. Monroe County, Ala., 116 F. 3d.* 1419.  The Defendants have not consented to suit nor have they waived their right to sovereign immunity.  The State of Alabama has not consented to suit or waived its right to sovereign immunity as evidence by § 14, Alabama Constitution of 1901.   Thus, in both the Eighth Amendment claims and in the state negligence claims the Defendants in their official capacity are immune from civil action.

Sued in their individual capacities on the state negligence claims, the Defendants assert that they are entitled to the protections of Alabama's state-agent immunity that was reformulated in the case of *Ex parte Cranman,* 792 So.2d 392 (Ala.2000),  The Defendants were acting in the discharge of their duties for which they must exercise a great deal of discretion to deal with the many contingencies that arise in daily prison life.  "[A] State officer or employee is not protected by discretionary immunity if in performing his discretionary functions he willfully, maliciously, fraudulently, or in bad faith injures someone. [Nonetheless,] [o]nce a defendant demonstrates that a plaintiff's claims arise from the defendant's performance of a discretionary function [i.e., a function now entitling the defendant to State-agent immunity], the burden then shifts to the

plaintiff to establish that the defendant acted in bad faith or with malice or willfulness, in order to deny the defendant discretionary immunity from suit. The applicability of the doctrine of discretionary function must be determined on a case-by-case basis, and it is a question of law to be decided by the trial court. *Ex parte Davis,* 721 So.2d 685, 689 (Ala.1998) (citations omitted).

"In order to claim the benefits of sovereign immunity, a State officer or employee bears the burden of showing that the plaintiff's claims arise from the officer or employee's performance of a discretionary duty on behalf of the State. Upon such a showing, the burden shifts to the plaintiff, who must show that the officer or employee acted fraudulently, willfully, maliciously, or in bad faith." *Ex parte Alabama Dep't of Transp.,* 764 So.2d 1263, 1268-69 (Ala.2000) (citation omitted).

The uncontested material evidence establishes that the Defendants were engaged in the good faith execution of their duties to safeguard the lives of inmates and that there is no evidence whatsoever that would suggest that they were proceeding in bad faith, illegally , maliciously or fraudulently. Unless the Plaintiff can establish these disqualifying circumstances by credible evidence the Defendants are entitled to the protections of state-agency immunity from the state negligence claims.

Sued also in their individual capacity for violations of the Eighth Amendment, the Defendants assert that they are entitled to the protection of qualified immunity. Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Dalrymple v. Reno,* 334 F.3d 991, 994 (11th Cir.2003)(quoting *Hope v. Pelzer,* 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002)). In determining whether qualified immunity is appropriate in a given case, "[t]he court

must first ask the threshold question whether the facts alleged, taken in the light most favorable to the plaintiffs, show that the government official's conduct violated a constitutional right." *Dalrymple,* 334 F.3d at 995 (citing *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)).

The Eighth Amendment protects incarcerated prisoners from punishment that is "cruel and unusual." *Whitley v. Albers,* 475 U.S. 312, 318, 106 S.Ct. 1078, 1083, 89 L.Ed.2d 251 (1986); *see also Ingraham v. Wright,* 430 U.S. 651, 664, 97 S.Ct. 1401, 1408-09, 51 L.Ed.2d 711 (1977). Specifically, the Eighth Amendment "prohibits the unnecessary and wanton infliction of pain ..., the infliction of pain totally without penological justification ..., [and] the infliction of punishment grossly disproportionate to the severity of the offense." *Ort v. White,* 813 F.2d 318, 321 (11th Cir.1987) (citing *Rhodes v. Chapman,* 452 U.S. 337, 346, 101 S.Ct. 2392, 2398, 69 L.Ed.2d 59 (1981)). Further, "[t]he 'cruel and unusual punishments' standard applies to the conditions of a prisoner's confinement." *Chandler v. Crosby,* 379 F.3d 1278, 1288 (11th Cir.2004) (citing *Rhodes,* 452 U.S. at 345-46, 101 S.Ct. at 2398- 99). The Eighth Amendment, however, "does not authorize judicial reconsideration of 'every governmental action affecting the interests or well-being of a prisoner.' " *Campbell v. Sikes,* 169 F.3d 1353, 1362 (11th Cir.1999) (quoting *Whitley v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986)). Furthermore, "the Constitution does not mandate comfortable prisons." *Rhodes,* 452 U.S. at 349, 101 S.Ct. at 2400. "If prison conditions are merely 'restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society.' " *Chandler,* 379 F.3d at 1289 (quoting *Rhodes,* 452 U.S. at 347, 101 S.Ct. at 2399). Prison conditions violate the Eighth Amendment only when they "involve the wanton and unnecessary infliction of pain." *Id.*

In *DeShaney v. Winnebago County Dep't of Soc. Servs.,* 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), the United States Supreme Court reiterated the State's constitutional responsibilities with regard to inmates:

> [W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being.... The rationale for this principle is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs-- *e.g.,* food, clothing, shelter, medical care, and reasonable safety--it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process   Clause.
> *\*5 DeShaney,* 489 U.S. at 199-200, 109 S.Ct. at 1005-1006
> (citations omitted).

A prison official may be held liable for failing to prevent harm to a prisoner if he is deliberately indifferent to the prisoner's health or safety. *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1994).   To establish liability for a prisoner's suicide under section 1983, "the plaintiff must show that the jail official displayed 'deliberate indifference' to the prisoner's taking of his own life." *Cook,* 402 F.3d at 1115 (quoting *Cagle v. Sutherland,* 334 F.3d 980, 986 (11th Cir.2003) (per curiam)) (internal quotation mark omitted). The plaintiff must prove that the official had subjective knowledge of a risk of serious harm and disregarded that risk by conduct that constituted more than mere negligence. *Snow ex rel. Snow v. City of Citronelle, Ala.,* 420 F.3d 1262, 1268 (11th Cir.2005) (quoting *Cook,* 402 F.3d at 1115). "[D]eliberate indifference requires that the defendant deliberately disregard 'a strong likelihood rather than a mere possibility that the self-infliction of harm will occur.' " *Cook,* 402 F.3d at 1115 (quoting *Cagle,* 334 F.3d at 986) (emphasis omitted). "[T]he mere opportunity for

suicide without more, is clearly insufficient to impose liability on those charged with the care of prisoners." *Tittle v. Jefferson County Comm'n,* 10 F.3d 1535, 1540 (11th Cir.1994) (en banc).

In this case, the Defendants perceived the danger that the Plaintiff was creating for himself and took actions to prevent him from committing suicide. They were successful in preserving his life. The actions of the Defendants did not violate the Eighth Amendment and they are entitled to qualified immunity.

## <u>CONCLUSION</u>

There is no issue of material fact and the Defendants are entitled to judgment as a matter of law.

Respectfully submitted,

TROY KING
ATTORNEY GENERAL

*/s/ Jack Wallace, Jr.*
Jack Wallace, Jr.
ASSISTANT ATTORNEY GENERAL

16

## CERTIFICATE OF SERVICE

I hereby certify that I have this 14th day of February, 2008, electronically filed the foregoing with the Clerk of Court using the CM/ECF system and I further certify that I have served a copy of the same by first-class United States Mail, postage prepaid and addressed upon the following:

Cedric Davis
AIS 233423
Easterling Correctional Facility
200 Wallace Drive
Clio, AL 36017-2615

/s/ *Jack Wallace, Jr.*
Jack Wallace, Jr.

**ADDRESS OF COUNSEL:**
Office of the Attorney General
11 South Union Street
Montgomery, Alabama 36130-0152
334-242-7555
334-242-2433 (Fax)

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

CEDRIC DAVIS, #233423      )
    Plaintiff,      )
          )
VS.      )
          )    CASE NO. 2:07-CV-1061-WHA
          )
CARTER F. DAVENPORT, et al.,      )
    Defendant (s)      )

## AFFIDAVIT

    Before me, the undersigned authority, a Notary Public in and for said County and State of Alabama at Large, personally appeared Charles Foster, who being known to me and being by me duly sworn, deposes and says under oath as follows:

    My name is Charles Foster, and I am presently employed as Correctional Officer, employed by the Department of Corrections, Easterling Correctional Facility, 200 Wallace Dr., Clio, Alabama, 36017. I am over twenty-one (21) years of age.

    On October 3, 2007, I observed Inmate Cedric Davis, B/223423, standing on the toilet with one end of a white string around his neck and the other end of the string was tied to the top of the doorframe of the Safe Cell (Exhibit #1). Sgt. Gerald Wright and I removed Inmate Davis from the cell. Inmate Davis was examined by Nurse Sharon McKinnon. While Inmate Davis was being examined, Warden Carter F. Davenport questioned Inmate Davis about the incident. Inmate Davis would not respond and continued to be non-verbal. After Inmate Davis completed the examination he was placed back in his cell (Safe Cell). I then conducted a security check on Inmate Davis. I observed Inmate Davis tearing the suicide mat in the cell. I advised Sgt. Wright of the incident. Sgt. Wright ordered Inmate Davis to place his hands through the tray door to be handcuffed. Inmate Davis did not comply. Sgt. Wright and I entered the Safe Cell and ordered Inmate Davis to face the wall inside the Safe Cell. I placed handcuffs on Inmate Davis. Inmate Davis was removed from the Safe Cell and placed in the Segregation Unit, due to his destructive behavior. I have not violated Inmate Davis' Constitutional Rights.

<br>

_Charles Foster_
CHARLES FOSTER

SWORN TO AND SUBSCRIBED TO before me this the _8th_ day of
_January_____, 2008.

_Linda A. Wilkinson_
NOTARY PUBLIC

My Commission Expires: _9/11/2011_

DEFENDANT'S
EXHIBIT
A

PENGAD 800-631-6989

EXHIBIT #1

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS

# INCIDENT REPORT

| 1. Institution:<br>**Easterling Correctional Facility** | 2. Date:<br>**10/03/07** | 3. Time:<br>**4:05 PM** | 4. Incident Number:<br>**ECF- 07- 1092** | Class Code:<br>**C** |
|---|---|---|---|---|

| 5. Location Where Incident Occurred:<br>**Administration Building Safe Cell** | 6. Type of Incident:<br>R/V #62-Intentionally Creating a Security, Safety or Health Hazard and R/V #69-Destroying, Stealing, Disposing, Altering, Damaging or Selling State Property. |
|---|---|

| 7. Time Incident Reported:<br>**4:07 PM** | 8. Who Received Report:<br>**Sgt. Gerald Wright** |
|---|---|

**9. Victims:**

| | Name | | | AIS |
|---|---|---|---|---|
| a. | N/A | | No. | N/A |
| b. | | | No. | |
| c. | | | No. | |

| **10. Suspects:** | Name | | AIS | **11. Witnesses:** | Name | | AIS |
|---|---|---|---|---|---|---|---|
| a. | Cedrick Davis | No. | B/233423 | a. | N/A | No. | N/A |
| b. | | No. | | b. | | No. | |
| c. | | No. | | c. | | No. | |
| d. | | No. | | d. | | No. | |
| e. | | No. | | e. | | No. | |
| | | | | f. | | No. | |
| | | | | g. | | No. | |

**PHYSICAL EVIDENCE:**
*12. Type of Evidence*

Kite String

**13. Description of Evidence:**

2 pieces of white sting approximately 12 inches long

**14. Chain of Evidence:**

a  Administration Safe Cell
b  Officer Charles Foster
c  Captain Kenneth Sconyers Office
d
e

**15. Narrative Summary:**

On October 3, 2007, Officer Charles Foster was assigned as the Administration Rover. At approximately 4:05 PM, Officer Foster was conducting a security check in the Administration Building. Inmate Cedrick Davis, B/233423, was housed in the Administration Building Safe Cell. Officer Foster observed Inmate Davis standing on the toilet with one end of a white string around his (Inmate Davis) neck. The other end of the string was tied to the top of the doorframe of the Safe Cell. At approximately 4:07 PM, Officer Foster reported the incident to Sgt. Gerald Wright. At approximately 4:10 PM, Sgt. Wright entered the Administration Building and proceeded to the Safe Cell. Sgt. Wright ordered Inmate Davis to place his hands through the tray door to be handcuffed. Inmate Davis complied with the order. Officer Foster placed handcuffs on Inmate Davis. Sgt. Wright and Officer Foster removed Inmate Davis from the Safe Cell. At approximately 4:14 PM, Nurse Sharon McKinnon examined Inmate Davis in the Administration Building (see attached medical report). At approximately 4:30 PM, Inmate Davis was released by Nurse McKinnon and placed back in the Safe Cell. At approximately 4:35 PM, Officer Foster was conducting a security check on Inmate Davis in the Safe Cell. Officer Foster observed Inmate Davis tearing the suicide mat in the Safe Cell. At approximately 4:37PM, Officer Foster advised Sgt. Wright that Inmate Davis was destroying the mat inside his cell. Sgt. Wright proceeded to Inmate Davis' cell. Sgt. Wright ordered Inmate Davis to place his hands through the tray door to be handcuffed. Inmate Davis did not comply with the order. At approximately 4:40 PM, Sgt.

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS

# INCIDENT REPORT/DUTY OFFICER REPORT
## CONTINUATION

| Institution: Easterling Correctional Facility | Incident Number: ECF- 07- | Class Code: C |
|---|---|---|
| Date: | Type of Incident: | |

Narrative Summary (Continued) Page No. 2

ordered Central Control to open the Safe Cell door. Sgt. Wright ordered Inmate Davis to face the wall inside the Safe Cell and place his hands behind his back. Inmate Davis complied with the order. Officer Foster placed handcuffs on Inmate Davis. Inmate Davis was removed from the Safe Cell by Sgt. Wright and Officer Foster. At approximately 4:45 PM, Warden Carter Davenport and Sgt. Wright escorted Inmate Davis to the Segregation Unit. Inmate Davis was placed in Administrative Segregation for R/V #62-Intentionally Creating a Security, Safety or Health Hazard and R/V #69-Destroying, Stealing, Disposing, Altering, Damaging or Selling State Property. No further action taken.

*Charles Foster COI*
Officer Charles Foster



**PHS**
PRISON
HEALTH
SERVICES
INCORPORATED

# EMERGENCY

| ADMISSION DATE | TIME | ORIGINATING FACILITY *Easterling* | ☐ SICK CALL  ☐ EMERGENCY |
|---|---|---|---|
| 10 /3 /07 | 4:14 AM/PM | ☐ SIR  ☐ POL  ☐ ESCAPEE ☐ ___ | ☐ OUTPATIENT |

| ALLERGIES | NT-213 | CONDITION ON ADMISSION ☑GOOD ☐FAIR ☐POOR ☐SHOCK ☐HEMORRHAGE ☐COMA |
|---|---|---|

| VITAL SIGNS: TEMP 98.4 | ORAL/RECTAL | RESP. 18 | PULSE 96 | B/P 110/80 | RECHECK IF SYSTOLIC ___ / ___ <100> 50 |
|---|---|---|---|---|---|

| NATURE OF INJURY OR ILLNESS | | ABRASION /// | CONTUSION # | BURN xx xx | FRACTURE Z Z | LACERATION / ___ SUTURES |
|---|---|---|---|---|---|---|

S/O Inmate was seen in safe cell with string from mattress tied around his neck. String was removed from neck once Inmate was taken from safe cell. VS stable, Ø erythema or edema noted to neck. No comment was made from Inmate. Inmate had blank stare on voice and would not acknowledgement any comments or question addressed to him.

**PHYSICAL EXAMINATION**

A- alt in coping.
P- Patient referred to Dr. Ferrell for new orders. Patient refused to speak with Dr. Ferrell. See order sheet for new order. Patient started to tear suicide smock once placed back in safe cell. New orders received to place Inmate In stripped cell p̄ Dr. Ferrell orders.



PROFILE RIGHT OR LEFT

RIGHT OR LEFT

| ORDERS / MEDICATIONS / IV FLUIDS | TIME | BY |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

**DIAGNOSIS**

**INSTRUCTIONS TO PATIENT**

| DISCHARGE DATE | TIME | RELEASE / TRANSFERRED TO ☑DOC ☐AMBULANCE ☐ ___ | CONDITION ON DISCHARGE ☑SATISFACTORY ☐POOR ☐FAIR ☐CRITICAL |
|---|---|---|---|
| 10 /3 /07 | 4:30 AM/PM | | |

| NURSE'S SIGNATURE | DATE | PHYSICIAN'S SIGNATURE | DATE 10/10/07 | CONSULTATION |
|---|---|---|---|---|
| J. McKinnon LPN | | (signature) | | |

| INMATE NAME (LAST, FIRST, MIDDLE) | DOC# | DOB | R/S | FAC. |
|---|---|---|---|---|
| Davis, Cedric | 233423 | 5-30-76 | Blm | Easterling |

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

CEDRIC DAVIS, #233423             )
    Plaintiff,                 )
                               )
VS.                              )
                               )    CASE NO. 2:07-CV-1061-WHA
                               )
CARTER F. DAVENPORT, et al.,     )
    Defendant (s)              )

### AFFIDAVIT

Before me, the undersigned authority, a Notary Public in and for said County and State of Alabama at Large, personally appeared Gerald Wright, who being known to me and being by me duly sworn, deposes and says under oath as follows:

My name is Gerald Wright, and I am presently employed as Correctional Sergeant, employed by the Department of Corrections, Easterling Correctional Facility, 200 Wallace Dr., Clio, Alabama, 36017. I am over twenty-one (21) years of age.

On October 3, 2007, I was present in the Administration Building when Inmate Cedric Davis, B/233423, attempted to hang himself with a piece of kite string that he tore from his mattress while he was present in the suicide Isolation Cell located in the Admin. Building. Officer Charles Foster and I observed Inmate Davis attempting to tie the string to the top of the doorframe. Officer Foster and I entered the cell and removed Inmate Davis from the cell. Mental Health Nurse, Sharon McKinnon, was present at the time that Inmate Davis was removed from the cell. Nurse McKinnon advised that she would examine Inmate Davis in her office. Inmate Davis was placed in a chair in the lobby outside Nurse McKinnon's office and she began to examine Inmate Davis. During Inmate Davis's examination, Warden Carter F. Davenport entered the lobby. Warden Davenport was advised of the incident. Warden Davenport questioned Inmate Davis about the incident. Inmate Davis would not respond and continued to be non-verbal. Inmate Davis' examination was completed and he was returned to the Isolation Cell in the Admin. Building. I have no further knowledge of this incident.

GERALD WRIGHT

SWORN TO AND SUBSCRIBED TO before me this the 1st day of January, 2008.

NOTARY PUBLIC

My Commission Expires: 9/11/2011

DEFENDANT'S
EXHIBIT
B

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CEDRIC DAVIS, #233423 | ) | |
|     Plaintiff, | ) | |
| | ) | |
| VS. | ) | |
| | ) | CASE NO. 2:07-CV-J061-WHA |
| | ) | |
| CARTER F. DAVENPORT, et al., | ) | |
|     Defendant (s) | ) | |

## AFFIDAVIT

Before me, the undersigned authority, a Notary Public in and for said County and State of Alabama at Large, personally appeared Carter F. Davenport, who being known to me and being by me duly sworn, deposes and says under oath as follows:

My name is Carter F. Davenport, and I am presently employed as Warden II, employed by the Department of Corrections, Easterling Correctional Facility, 200 Wallace Dr., Clio, Alabama, 36017. I am over twenty-one (21) years of age.

I did not violate Inmate Cedric Davis', B/233423, rights. On October 3, 2007, Inmate Davis was evaluated by the Mental Health staff. After being released, Inmate Davis was placed in the cell behind the Control Unit. Once inside the cell, Inmate Davis began to destroy the suicide mattress and suicide gown. Inmate Davis was ordered to stop destroying the items. He did not comply with the orders. Because of Inmate Davis' destructive behavior and uncooperativeness, he was placed in a cell in the Segregation Unit. All items were removed from the cell.

CARTER F. DAVENPORT

SWORN TO AND SUBSCRIBED TO before me this the _4th_ day of _January_, 2008.

NOTARY PUBLIC

My Commission Expires: _7-11-11_

DEFENDANT'S
EXHIBIT
C

PENGAD 800-631-6989

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

CEDRIC DAVIS, #233423          )
        Plaintiff,             )
                               )
    VS.                        )
                               )      CASE NO. 2:07-CV-1061-WHA
                               )
CARTER F. DAVENPORT, et al.,   )
        Defendant (s)          )

## AFFIDAVIT

Before me, the undersigned authority, a Notary Public in and for said County and State of Alabama at Large, personally appeared Willie Bryant, who being known to me and being by me duly sworn, deposes and says under oath as follows:

My name is Willie Bryant, and I am presently employed as Administrative Lieutenant, employed by the Department of Corrections, Easterling Correctional Facility, 200 Wallace Dr., Clio, Alabama, 36017. I am over twenty-one (21) years of age.

Inmate Cedric Davis, B/223423, stated that he was placed in the Segregation Unit cell with other inmates. This is not true. Inmate Davis was moved to the Segregation Unit on October 3, 2007, due to behavior (Exhibit #1). Inmate Davis was placed in a single cell on Mental Health watch (Exhibit #2).

On October 5, 2007, during a security check of Inmate Davis' cell, Officer Larry McCovery observed Inmate Davis' left wrist bleeding and that Inmate Davis had a razor in his right hand (Exhibit #3). The Shift Commander was notified of the incident. Shift Commander Nathaniel Lawson ordered Inmate Davis to drop the razor blade. Inmate Davis did not comply with the order and put the razor blade in his mouth and backed up to the cell door to be restrained with handcuffs. After Inmate Davis was restrained, Lt. Lawson ordered Inmate Davis to spit the razor blade out. Inmate Davis refused and put the razor between his lips. The razor blade was removed by Officer William Davis. Inmate Davis was taken to the Health Care Unit for treatment (Exhibit #4). Inmate Davis was questioned about the razor blade and refused to tell where he got the razor blade. Inmate Davis has not been treated unfairly by me or any other ADOC employee.

_WILLIE BRYANT_
WILLIE BRYANT

SWORN TO AND SUBSCRIBED TO before me this the __11__ day of __Jan.__, 2008.

_Bym K. Gavins_
NOTARY PUBLIC

My Commission Expires: __6-7-2010__


DEFENDANT'S
EXHIBIT
D

**EXHIBIT #1**

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS

# INCIDENT REPORT

| 1. Institution:<br>**Easterling Correctional Facility** | 2. Date:<br>**10/03/07** | 3. Time:<br>**4:05 PM** | 4. Incident Number:<br>**ECF- 07-** | Class Code:<br>**C** |
|---|---|---|---|---|

| 5. Location Where Incident Occurred:<br>**Administration Building Safe Cell** | 6. Type of Incident:<br>**R/V #62-Intentionally Creating a Security, Safety or Health Hazard and R/V #69-Destroying, Stealing, Disposing, Altering, Damaging or Selling State Property.** |
|---|---|

| 7. Time Incident Reported:<br>**4:07 PM** | 8. Who Received Report:<br>**Sgt. Gerald Wright** |
|---|---|

9. Victims:

| | Name | | | AIS |
|---|---|---|---|---|
| a. | **N/A** | | No. | **N/A** |
| b. | | | No. | |
| c. | | | No. | |

| 10. Suspects: | Name | | AIS | | 11. Witnesses: | Name | | AIS |
|---|---|---|---|---|---|---|---|---|
| a. | **Cedrick Davis** | No. | **B/233423** | | a. | **N/A** | No. | **N/A** |
| b. | | No. | | | b. | | No. | |
| c. | | No. | | | c. | | No. | |
| d. | | No. | | | d. | | No. | |
| e. | | No. | | | e. | | No. | |
| | | | | | f. | | No. | |
| | | | | | g. | | No. | |

**PHYSICAL EVIDENCE:**

12. Type of Evidence

**Kite String**

13. Description of Evidence:

**2 pieces of white sting approximately 12 inches long**

14. Chain of Evidence:

a **Administration Safe Cell**
b **Officer Charles Foster**
c **Captain Kenneth Sconyers Office**
d
e

15. Narrative Summary:

**On October 3, 2007, Officer Charles Foster was assigned as the Administration Rover. At approximately 4:05 PM, Officer Foster was conducting a security check in the Administration Building. Inmate Cedrick Davis, B/233423, was housed in the Administration Building Safe Cell. Officer Foster observed Inmate Davis standing on the toilet with one end of a white string around his (Inmate Davis) neck. The other end of the string was tied to the top of the doorframe of the Safe Cell. At approximately 4:07 PM, Officer Foster reported the incident to Sgt. Gerald Wright. At approximately 4:10 PM, Sgt. Wright entered the Administration Building and proceeded to the Safe Cell. Sgt. Wright ordered Inmate Davis to place his hands through the tray door to be handcuffed. Inmate Davis complied with the order. Officer Foster placed handcuffs on Inmate Davis. Sgt. Wright and Officer Foster removed Inmate Davis from the Safe Cell. At approximately 4:14 PM, Nurse Sharon McKinnon examined Inmate Davis in the Administration Building (see attached medical report). At approximately 4:30 PM, Inmate Davis was released by Nurse McKinnon and placed back in the Safe Cell. At approximately 4:35 PM, Officer Foster was conducting a security check on Inmate Davis in the Safe Cell. Officer Foster observed Inmate Davis tearing the suicide mat in the Safe Cell. At approximately 4:37PM, Officer Foster advised Sgt. Wright that Inmate Davis was destroying the mat inside his cell. Sgt. Wright proceeded to Inmate Davis' cell. Sgt. Wright ordered Inmate Davis to place his hands through the tray door to be handcuffed. Inmate Davis did not comply with the order. At approximately 4:40 PM, Sgt.**

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS

# INCIDENT REPORT/DUTY OFFICER REPORT
## CONTINUATION

| Institution: | Incident Number: | Class Code: |
|---|---|---|
| **Easterling Correctional Facility** | **ECF- 07-** | **C** |

| Date: | Type of Incident: |
|---|---|

Narrative Summary (Continued) Page No. 2

ordered Central Control to open the Safe Cell door. Sgt. Wright ordered Inmate Davis to face the wall inside the Safe Cell and place his hands behind his back. Inmate Davis complied with the order. Officer Foster placed handcuffs on Inmate Davis. Inmate Davis was removed from the Safe Cell by Sgt. Wright and Officer Foster. At approximately 4:45 PM, Warden Carter Davenport and Sgt. Wright escorted Inmate Davis to the Segregation Unit. Inmate Davis was placed in Administrative Segregation for R/V #62-Intentionally Creating a Security, Safety or Health Hazard and R/V #69-Destroying, Stealing, Disposing, Altering, Damaging or Selling State Property. No further action taken.

*Charles Foster COI*
Officer Charles Foster

EXHIBIT #2

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS
MENTAL HEALTH SERVICES

# MENTAL HEALTH WATCH/RESTRAINT PROCEDURE

INTERVENTION: ☐ Mental Health Observation ☑ Suicide Watch ☐ Restraints ☐ SU Precautionary Watch

INTERVALS OBSERVED: ☐ 30 Minutes ☐ 15 Minutes ☐ other: _____  LOCATION: _____

DATE OF INITIATION: 10/3/07  DATES INCLUDED: 10/3/07 to __/__/__

| CODE | ACTIVITY | CODE | ACTIVITY | CODE | ACTIVITY | CODE | ACTIVITY |
|---|---|---|---|---|---|---|---|
| 1. | Yelling | 6. | Quiet | 11. | Fluid Accepted | 16. | Toileted |
| 2. | Struggling | 7. | Relaxed | 12. | Fluids Rejected | 17. | Nursing Visit |
| 3. | Crying | 8. | Mumbling | 13. | Meal Accepted | 18. | Range of Motion Exercise |
| 4. | Laughing | 9. | Walking | 14. | Meal Rejected | 19. | Mental Health Visit |
| 5. | Sleeping | 10. | Sitting | 15. | Showering | | |

| | 1st shift | | | 2nd shift | | | 3rd shift | |
|---|---|---|---|---|---|---|---|---|
| TIME | ACTIVITY CODE | STAFF NAME | TIME | ACTIVITY CODE | STAFF NAME | TIME | ACTIVITY CODE | STAFF NAME |
| | | | | | | 10:00 pm | 5 | KW |
| | | | 2:00 pm | | | 10:15 pm | 5 | W7 |
| 6:00 am | | | 2:15 pm | | | 10:30 pm | 5 | W7 |
| 6:15 am | | | 2:30 pm | | | 10:45 pm | 5 | W7 |
| 6:30 am | | | 2:45 pm | | | 11:00 pm | 5 | W7 |
| 6:45 am | | | 3:00 pm | | | 11:15 pm | 5 | W7 |
| 7:00 am | | | 3:15 pm | | | 11:30 pm | 5 | KW |
| 7:15 am | | | 3:30 pm | | | 11:45 pm | 5 | tW |
| 7:30 am | | | 3:45 pm | | | 12:00 am | 5 | W7 |
| 7:45 am | | | 4:00 pm | | | 12:15 am | 5 | W7 |
| 8:00 am | | | 4:15 pm | | | 12:30 am | 5 | W7 |
| 8:15 am | | | 4:30 pm | | | 12:45 am | 5 | W7 |
| 8:30 am | | | 4:45 pm | 6 | D.Sell | 1:00 am | 5 | W7 |
| 8:45 am | | | 5:00 pm | 6 | T.G. | 1:15 am | 5 | W7 |
| 9:00 am | | | 5:15 pm | 10 | T.G. | 1:30 am | 5 | W7 |
| 9:15 am | | | 5:30 pm | 10 | T.G. | 1:45 am | 5 | W7 |
| 9:30 am | | | 5:45 pm | 4 | T.G. | 2:00 am | 5 | W7 |
| 9:45 am | | | 6:00 pm | 9 | T.G. | 2:15 am | 5 | W7 |
| 10:00 am | | | 6:15 pm | 6 | T.G. | 2:30 am | 5 | W7 |
| 10:15 am | | | 6:30 pm | 10 | T.G. | 2:45 am | 5 | W7 |
| 10:30 am | | | 6:45 pm | 6 | T.G. | 3:00 am | 5 | W7 |
| 10:45 am | | | 7:00 pm | 6 | T.G. | 3:15 am | 19 | KW |
| 11:00 am | | | 7:15 pm | 10 | T.G. | 3:30 am | 6 | GW |
| 11:15 am | | | 7:30 pm | 10 | T.G. | 3:45 am | 6 | RW |
| 11:30 am | | | 7:45 pm | 6 | T.G. | 4:00 am | 5 | RW |
| 11:45 am | | | 8:00 pm | 6 | T.G. | 4:15 am | 5 | GW |
| 12:00 pm | | | 8:15 pm | 16 | T.G. | 4:30 am | 5 | W7 |
| 12:15 pm | | | 8:30 pm | 10 | T.G. | 4:45 am | 5 | W7 |
| 12:30 pm | | | 8:45 pm | 6 | T.G. | 5:00 am | 5 | W7 |
| 12:45 pm | | | 9:00 pm | 4 | T.G. | 5:15 am | 5 | W7 |
| 1:00 pm | | | 9:15 pm | 12,9 | T.G. | 5:30 am | 5 | W7 |
| 1:15 pm | | | 9:30 pm | 9 | T.G. | 5:45 am | 5 | W7 |
| 1:30 pm | | | 9:45 pm | 7 | | | | |
| 1:45 pm | | | | | B/M | AIS#: 233423 | | |

CEDZC DAVZS

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS
MENTAL HEALTH SERVICES

# MENTAL HEALTH WATCH/RESTRAINT PROCEDURE

**INTERVENTION:** ☐Mental Health Observation ☐Suicide Watch ☐Restraints ☐SU Precautionary Watch

**INTERVALS OBSERVED:** ☐ 30 Minutes ☑15 Minutes ☐Other:___  **LOCATION:** _Segregation_

**DATE OF INITIATION:** _10-14-07_  **DATES INCLUDED:** __/__/__ to __/__/__

| CODE | ACTIVITY | | CODE | ACTIVITY | | CODE | ACTIVITY | | CODE | ACTIVITY |
|------|----------|--|------|----------|--|------|----------|--|------|----------|
| 1. | Yelling | | 6. | Quiet | | 11. | Fluid Accepted | | 16. | Toileted |
| 2. | Struggling | | 7. | Relaxed | | 12. | Fluids Rejected | | 17. | Nursing Visit |
| 3. | Crying | | 8. | Mumbling | | 13. | Meal Accepted | | 18. | Range of Motion Exercise |
| 4. | Laughing | | 9. | Walking | | 14. | Meal Rejected | | 19. | Mental Health Visit |
| 5. | Sleeping | | 10. | Sitting | | 15. | Showering | | | |

| | 1st shift | | | 2nd shift | | | 3rd shift | |
|------|---------------|------------|------|---------------|------------|------|---------------|------------|
| TIME | ACTIVITY CODE | STAFF NAME | TIME | ACTIVITY CODE | STAFF NAME | TIME | ACTIVITY CODE | STAFF NAME |
| 6:00 am | 5 | DF | 2:00 pm | 6 | D Bell | 10:00 pm | 6 | S.S |
| 6:15 am | 5 | DF | 2:15 pm | 6 | D Bell | 10:15 pm | 6 | S.S |
| 6:30 am | 5 | DF | 2:30 pm | 6 | D Bell | 10:30 pm | 6 | S.S |
| 6:45 am | 5 | DF | 2:45 pm | 6 | D Bell | 10:45 pm | 6 | S.S |
| 7:00 am | 5 | DF | 3:00 pm | 6 | WD | 11:00 pm | 6 | S.S |
| 7:15 am | 6 | DF | 3:15 pm | 6 | WD | 11:15 pm | 6 | S.S |
| 7:30 am | 6 | DF | 3:30 pm | 6 | WD | 11:30 pm | 6 | S.S |
| 7:45 am | 6 | DF | 3:45 pm | 6 | WD | 11:45 pm | 6 | S.S |
| 8:00 am | 6 | DB | 4:00 pm | 6 | WD | 12:00 am | 6 | S.S |
| 8:15 am | 6 | DF | 4:15 pm | 11,14 | WD | 12:15 am | 5 | S.S |
| 8:30 am | 6 | DF | 4:30 pm | 6 | D Bell | 12:30 am | 5 | S.S |
| 8:45 am | 6 | DF | 4:45 pm | 6 | D Bell | 12:45 am | 5 | S.S |
| 9:00 am | 6 | DF | 5:00 pm | 6 | D Bell | 1:00 am | 5 | S.S |
| 9:15 am | 6 | DF | 5:15 pm | 6 | D Bell | 1:15 am | 5 | S.S |
| 9:30 am | 6 | DF | 5:30 pm | 6 | D Bell | 1:30 am | 5 | S.S |
| 9:45 am | 6 | DF | 5:45 pm | 6 | D Bell | 1:45 am | 5 | S.S |
| 10:00 am | 11,13 | DF | 6:00 pm | 6 | D Bell | 2:00 am | 5 | S.S |
| 10:15 am | 6 | DF | 6:15 pm | 6 | D Bell | 2:15 am | 5 | S.S |
| 10:30 am | 6 | DF | 6:30 pm | 6 | D Bell | 2:30 am | 5 | S.S |
| 10:45 am | 5 | DF | 6:45 pm | 1 | D Bell | 2:45 am | 5 | S.S |
| 11:00 am | 5 | DF | 7:00 pm | 6 | D Bell | 3:00 am | 17 | S.S |
| 11:15 am | 5 | DF | 7:15 pm | 6 | D Bell | 3:15 am | 6 | S.S |
| 11:30 am | 5 | DF | 7:30 pm | 6 | D Bell | 3:30 am | 6 | S.S |
| 11:45 am | 5 | DF | 7:45 pm | 6 | D Bell | 3:45 am | 6,13 | S.S |
| 12:00 pm | 5 | DF | 8:00 pm | 6 | D Bell | 4:00 am | 6 | S.S |
| 12:15 pm | 5 | DF | 8:15 pm | 6 | D Bell | 4:15 am | 6 | S.S |
| 12:30 pm | 5 | DF | 8:30 pm | 6 | D Bell | 4:30 am | 6 | S.S |
| 12:45 pm | 5 | DF | 8:45 pm | 6 | D Bell | 4:45 am | 6 | S.S |
| 1:00 pm | 17 | DF | 9:00 pm | 6 | D Bell | 5:00 am | 6 | S.S |
| 1:15 pm | 7,19 | DF | 9:15 pm | 6 | D Bell | 5:15 am | 6 | S.S |
| 1:30 pm | 6 | DF | 9:30 pm | 6 | D Bell | 5:30 am | 6 | S.S |
| 1:45 pm | 6 | DF | 9:45 pm | 6 | D Bell | 5:45 am | 6 | S.S |

**INMATE NAME:** 

**AIS#:** 

PROPERTY PERMITTED:

**EXHIBIT #3**

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS

# INCIDENT REPORT

| 1. Institution: **Easterling Correctional Facility** | 2. Date: **10/5/07** | 3. Time: **5:00 PM** | 4. Incident Number: **ECF-07-1091** | Class Code: **B** |
|---|---|---|---|---|

| 5. Location Where Incident Occurred: **Dorm B (Segregation Unit) Cell B-26** | 6. Type of Incident: **Self Inflicted Injury** |
|---|---|

| 7. Time Incident Reported: **5:01 PM** | 8. Who Received Report: **Lt. Nathaniel Lawson** *Lt. Nathaniel Lawson* |
|---|---|

**9. Victims:**

| | Name | | | AIS | |
|---|---|---|---|---|---|
| a. | **N/A** | | No. | **N/A** | |
| b. | | | No. | | |
| c. | | | No. | | |

**10. Suspects:**

| | Name | | AIS |
|---|---|---|---|
| a. | **Cedrick Davis** | No. | **B/233423** |
| b. | | No. | |
| c. | | No. | |
| d. | | No. | |
| e. | | No. | |

**11.**

| | Name | | AIS |
|---|---|---|---|
| a. | **N/A** | No. | **N/A** |
| b. | | No. | |
| c. | | No. | |
| d. | | No. | |
| e. | | No. | |
| f. | | No. | |
| g. | | No. | |

**PHYSICAL EVIDENCE:**

12. Type of Evidence
**N/A**

13. Description of Evidence:
**N/A**

14. Chain of Evidence:
a **N/A**
b
c
d
e

**15. Narrative Summary:**

On October 5, 2007, Officer Larry McCovery was assigned as Dorm B (Segregation Unit) Rover. At approximately 5:00 PM, Officer McCovery approached Cell B-26, which housed Inmate Cedrick Davis, B/233423, to conduct a security check and sign off on the Seg Suicide Watch Log. Officer McCovery observed a red circle on the observation window drawn in blood. Officer McCovery opened the tray door and observed Inmate Davis bleeding from the left wrist and a razor in his right hand. At approximately 5:01 PM, Officer McCovery notified Lt. Nathaniel Lawson of the incident. At approximately 5:03 PM, Lt. Lawson and Sgt. Gerald Wright entered the Segregation Unit. Lt. Lawson ordered Inmate Davis to drop the razor blade and report to the tray door to be handcuffed. Inmate Davis did not comply with the order. Lt. Lawson ordered Inmate Davis a second time to drop the razor blade and report to the tray door to be handcuffed. Inmate Davis put the razor blade in his mouth and backed up to the door. Officer McCovery placed handcuffs on Inmate Davis. Sgt. Wright and Lt. Lawson removed Inmate Davis from his cell and escorted Inmate Davis to the lobby area. Lt. Lawson ordered Inmate Davis to spit the razor blade from his mouth. Inmate Davis put the razor between his lips and it was removed by Officer William Davis. At approximately 5:20 PM, Lt. Lawson and Sgt. Wright escorted Inmate Davis to the Health Care Unit. Inmate Davis was examined and treated by Nurse Mauline Moates (see attached medical report). At approximately 5:45 PM, Inmate Davis was placed in the Health Care Unit Safe Cell on Suicide Watch per Dr. Warren

Distribution: ORIGINAL AND ONE (1) COPY to Central I & I Division   COPY to Deputy Commissioner of Operations (Class A and B ONLY)
COPY to Institutional File   COPY to Central Records Office

ADOC Form 302-A – June 1, 2005

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS

# INCIDENT REPORT/DUTY OFFICER REPORT
## CONTINUATION

| Institution:<br>**Easterling Correctional Facility** | Incident Number:<br>**ECF-07-** | Class Code:<br>**B** |
|---|---|---|
| Date:<br>**10-5-07** | Type of Incident:<br>**Self Inflicted Injury** | |

Narrative Summary (Continued) Page No. **2**

Hunter. At approximately 6:15 PM, lt. Lawson reported the incident to the On Call Duty Official. Warden II, Carter F. Davenport. At approximately 7:25 PM, Lt. Lawson emailed a Duty Officer Report to Deputy Commissioner, James Deloach, Regional Coordinator, Gwendolyn Mosley, Central I&I Reports, Warden III, Louis Boyd, Warden II, Carter F. Davenport, Captain Jeffery Knox, Captain Kenneth Sconyers, and Lt. Willie Bryant (see attached Duty Officer Report). Inmate Davis remained in the Health Care Unit Safe Cell on Suicide Watch.

Larry McCovery, CO

EXHIBIT #4



**PHS**
PRISON
HEALTH
SERVICES
INCORPORATED

# EMERGENCY

| ADMISSION DATE | TIME | ORIGINATING FACILITY | | SICK CALL | EMERGENCY |
|---|---|---|---|---|---|
| 10/5/07 | 5:20 AM/PM | ☐ SIR ☐ PDL ☐ ESCAPEE ☐ | | ☐ OUTPATIENT | |

CONDITION ON ADMISSION
☐ GOOD  ☑ FAIR  ☐ POOR  ☐ SHOCK  ☐ HEMORRHAGE  ☐ COMA

ALLERGIES: NKA          0.96%

VITAL SIGNS: TEMP 99°  ORAL/RECTAL  RESP. 16  PULSE 107  B/P 120/78  RECHECK IF SYSTOLIC <100> 50

**NATURE OF INJURY OR ILLNESS**

| ABRASION /// | CONTUSION # | BURN xx/xx | FRACTURE Z/Z | LACERATION / _____ SUTURES |
|---|---|---|---|---|

S'' if need to talk to
somebody in MH''
O- B/M ambulate to HCU
in handcuffs + safe vest
escorted by Lt. Lawson +
Sgt. Wright. Two 1½''
lacerations noted to ® wrist.
® hand covered in blood.
I/M crying + insisting on
talking to someone from
Mental Health. W as explained
to I/M that there's

PROFILE RIGHT OR LEFT

RIGHT OR LEFT

**PHYSICAL EXAMINATION**

no one available @ this
time, that someone from
MH would talk to him
on Monday. State he's
hearing voices telling him
he's no good + to kill
himself. State he cut himself trying to
+ alt coping.
P- Notify Dr. Stott
orders received
Cleanse wounds ĉ Betadine + NS
apply dry drsg + steri strips

| ORDERS / MEDICATIONS / IV FLUIDS | TIME | BY |
|---|---|---|
| Continue Suicide Watch | | |
| MH will talk to him | | |
| on Monday | | |
| Plus + call ĉ HCU | | |

**DIAGNOSIS**

**INSTRUCTIONS TO PATIENT**

| DISCHARGE DATE | TIME | RELEASE / TRANSFERRED TO | ☑ DOC ☐ AMBULANCE ☐ | CONDITION ON DISCHARGE ☑ SATISFACTORY ☐ POOR ☐ FAIR ☐ CRITICAL |
|---|---|---|---|---|
| 10/5/07 | 5:45 AM/PM | | | |

| NURSE'S SIGNATURE | DATE | PHYSICIAN'S SIGNATURE | DATE | CONSULTATION |
|---|---|---|---|---|
| T.W. Nkosi LPN | 10/5/07 | A. Stott MD PhD | 10/16/07 | |

| INMATE NAME (LAST, FIRST, MIDDLE) | DOC# | DOB | R/S | FAC. |
|---|---|---|---|---|
| Davis, Cedric | 233423 | 5-30-76 | B/M | ECF |